The HORN & HARDART COMPANY, Plaintiff-Appellant,

v.

The PILLSBURY COMPANY, Defendant-Appellee.

No. 12, Docket 89-7212.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1989.
Decided Oct. 17, 1989.

Ronald S. Rauchberg, New York City (James F. Parver, Bradley I. Ruskin, Mary Ruth Houston, Proskauer Rose Goetz & Mendelsohn, New York City, of counsel), for plaintiff-appellant.

Stuart L. Shapiro, New York City (Peter E. Greene, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for defendant-appellee.

Before PRATT, MINER, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

The central question presented by this appeal is to what extent, if any, parol evidence may be employed to connect signed and unsigned writings to satisfy the New York Statute of Frauds, N.Y.U.C.C. § 1–206(1) (McKinney 1964) ("Statute of Frauds"). Plaintiff-appellant Horn & Hardart Company ("Horn & Hardart") appeals from a judgment entered in the United States District Court for the Southern District of New York (Whitman Knapp, *Judge*) granting defendant-appellee Pillsbury Company's ("Pillsbury") motion for summary judgment under Fed.R.Civ.P. 56(b). *Horn & Hardart Co. v. Pillsbury Co.*, 703 F.Supp. 1062 (S.D.N.Y.1989). Horn & Hardart sought to recover damages it allegedly sustained as a result of Pillsbury's breach of an oral agreement. In Horn & Hardart's view, the oral agreement required Horn & Hardart to forbear from efforts to acquire Diversifoods, Inc. ("Diversifoods"), allowing Pillsbury to acquire Diversifoods. In exchange, Pillsbury would sell certain assets of Diversifoods to Horn & Hardart at a favorable price following Pillsbury's acquisition of Diversifoods. The district court found, however, that the alleged oral contract was unenforceable under the Statute of Frauds. On this appeal, as in the district court, Horn & Hardart argues that a signed letter from the President of Pillsbury to Pillsbury's Board of Directors and various unsigned internal memoranda of Pillsbury, connected by parol evidence, may be read together to satisfy the Statute of Frauds. In addition, Horn & Hardart contends that the district court erred in affirming the magistrate's denial of its motion to discover written notes made by Pillsbury's General Counsel concerning the alleged oral agreement. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

In April 1985, Horn & Hardart initiated negotiations with Diversifoods, the largest U.S. franchisee of Burger King restaurants, concerning a possible acquisition of Diversifoods. Pillsbury, the corporate parent of Burger King, was also interested in acquiring Diversifoods and, in early May 1985, Pillsbury approached Horn & Hardart to discuss their mutual acquisition plans.

At a meeting attended by senior management of Pillsbury and Horn & Hardart, Pillsbury proposed a "standstill agreement." It appears undisputed that under the terms of the proposal, Horn & Hardart would refrain from further efforts to acquire Diversifoods, allowing Pillsbury to complete its acquisition of Diversifoods. In return, Pillsbury proposed to sell several of Diversifoods' non-Burger King assets to Horn & Hardart at a price well below fair market value. Negotiations proceeded over a two-day period. The ground rules for these negotiations are in dispute. Pillsbury alleges that the parties each promised to suspend further discussions with Diversifoods while they attempted to reach an agreement. Horn & Hardart denies the existence of such negotiation ground rules, contending that a standstill agreement was only part of the overall agreement it seeks to enforce.

Negotiations were abruptly halted on May 15, 1985, when Pillsbury learned that investment bankers representing Horn & Hardart and Diversifoods had entered into discussions earlier that day. Pillsbury considered such discussions a breach of the established ground rules. As a result, Pillsbury terminated its discussions with Horn & Hardart. Two days later, John Stafford, Pillsbury's President, sent a signed letter to each member of Pillsbury's Board of Directors (the "Stafford letter"). The Stafford letter notified the Board of a special meeting to discuss efforts to acquire Diversifoods. The letter recounted various measures previously undertaken by Pillsbury and suggested additional steps to pursue the acquisition. In this context, the letter made reference to "our verbal agreement" with Horn & Hardart.

On May 18, 1985, Pillsbury and Diversifoods entered into a merger agreement, which was subsequently approved by the boards of directors of Pillsbury and Diversifoods, respectively.

Horn & Hardart commenced the underlying action in the district court on July 17, 1985. It alleged that the preliminary discussions held on May 14 had, in fact, resulted in an enforceable oral agreement.

To overcome the Statute of Frauds defense, Horn & Hardart offered the Stafford letter and various unsigned internal memoranda of Pillsbury. In preparing for trial, Horn & Hardart sought to discover notes concerning the May 14 meeting between Pillsbury and Horn & Hardart prepared by Edward C. Stringer, the General Counsel of Pillsbury. Stringer, who did not attend that meeting, made notes based on his discussions with the Pillsbury representatives present at that meeting. The district court found the notes to be attorney work product and affirmed the magistrate's decision denying Horn & Hardart's discovery motion. The district court also determined that the combination of the Stafford letter and unsigned internal memoranda offered by Horn & Hardart could not, as a matter of law, satisfy the Statute of Frauds. Accordingly, the district court granted Pillsbury's motion for summary judgment.

## DISCUSSION

### A. The Statute of Frauds.

On this appeal, as in the district court, Horn & Hardart contends that the Stafford letter and various unsigned internal memoranda, connected to the Stafford letter by parol evidence, satisfy the New York Statute of Frauds. We disagree.

Review of a grant of summary judgment focuses on whether the district court properly concluded that there was "no genuine issue as to any material fact," thereby entitling the moving party to "judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Under New York law, the Statute of Frauds may be satisfied by a combination

of signed and unsigned writings, "provided that they clearly refer to the same subject matter or transaction." *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 55, 110 N.E.2d 551, 554 (1953). However, the rule fashioned in *Crabtree* to permit satisfaction of the Statute of Frauds by a series of signed and unsigned writings contains two strict threshold requirements. First, the signed writing must itself establish "a contractual relationship between the parties." *Id.* at 56, 110 N.E.2d at 554. *See O'Keeffe v. Bry*, 456 F.Supp. 822, 829 (S.D. N.Y.1978) ("To the extent that *Crabtree* permits the use of a 'confluence of memoranda,' the minimum condition for such use is the existence of one [signed] document establishing the basic, underlying contractual commitment."). Second, the unsigned writing must "on its face refer to the same transaction as that set forth in the one that was signed." *Crabtree*, 305 N.Y. at 56, 110 N.E.2d at 554. Compliance with these two threshold requirements may be decided by the district court as a matter of law, and must be considered without the introduction of parol evidence. "Parol evidence ... is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute of Frauds.... That issue must be determined from the documents themselves, as a matter of law." *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 118, 538 N.Y.S.2d 503, 505, 535 N.E.2d 633, 635 (1989). *See also O'Keeffe*, 456 F.Supp. at 829; *Scheck v. Francis*, 26 N.Y.2d 466, 472, 311 N.Y.S.2d 841, 845, 260 N.E.2d 493, 496 (1970).

■ The signed writing offered by Horn & Hardart consists of a letter from Pillsbury's President, John Stafford, to each member of Pillsbury's Board of Directors. In relevant part, that letter states:

"Since our May 7 Board Meeting, a great deal has occurred:

Following your suggestion, we initiated negotiations with Horn & Hardart. Early discussions were positive, but almost immediately they violated *our verbal agreement* and we broke off discussions" (emphasis added).

This signed writing fails to satisfy the first threshold requirement of the *Crabtree* rule since the Stafford letter does not establish the contractual relationship that Horn & Hardart asserts. Rather, as the district court found, "when the phrase 'our verbal agreement' is read in the context of the entire sentence, it would appear that Stafford was not referring to any ultimate agreement between the parties, but instead to certain ground rules that they had adopted to govern their conduct during their continuing 'discussions.'" *Horn & Hardart Co.*, 703 F.Supp. at 1065.

Furthermore, the Stafford letter fails the second *Crabtree* requirement that it "set forth" the transaction that Horn & Hardart asserts. The signed writing must identify the transaction sufficiently to permit connection between the signed and unsigned writings. *Crabtree*, 305 N.Y. at 55, 110 N.E.2d at 553. Although the Stafford letter identifies the subject matter of the transaction in the broadest sense, *i.e.* the subject matter is Diversifoods, Inc., the specific nature of the transaction to which the letter refers remains unclear. Taken out of context, the "verbal agreement" might be the agreement that Horn & Hardart asserts. As the district court found, however, a more plausible interpretation is that the companies agreed only that they would both stand still with regard to Diversifoods while negotiations proceeded.

While the district court's explanation of the phrase "our verbal agreement" as referring to the negotiation ground rules is persuasive, it is unnecessary. Speculation and hypothesis are anathema to the policy behind the Statute of Frauds. If the proferred writings permit doubt as to the existence or nature of the contractual relationship, the inquiry is terminated and the agreement deemed unenforceable. The failure of the Stafford letter to sufficiently set forth the agreement asserted by Horn & Hardart precludes connection between the signed and unsigned writings under *Crabtree*. Accordingly, we agree with the district court's grant of Pillsbury's motion for summary judgment.

## B. *The Work Product Doctrine.*

Horn & Hardart contends that the district court erred by affirming the magistrate's denial of Horn & Hardart's motion to discover notes made by Edward C. Stringer, Pillsbury's General Counsel. Specifically, it argues that the notes made by Stringer were not made in anticipation of litigation and, thus, were not protected by the attorney work product doctrine.

Discovery orders are committed to the discretion of the district court, and will not be disturbed absent an abuse of discretion. *In re Von Bulow*, 828 F.2d 94, 99 (2d Cir.1987); *DeMasi v. Weiss*, 669 F.2d 114, 122 (3d Cir.1982).

The work product doctrine protects "an attorney's mental impressions, opinions or legal theories concerning specific litigation" from disclosure. *Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 88 (E.D.N.Y.1981). *See Hickman v. Taylor*, 329 U.S. 495, 512–13, 67 S.Ct. 385, 394–95, 91 L.Ed. 451 (1947); *In re John Doe Corp.*, 675 F.2d 482, 492 (2d Cir.1982). The district court's denial of discovery, based on a finding that Stringer's notes contained mental impressions and were made "with an eye toward litigation," *Hickman*, 329 U.S. at 511, 67 S.Ct. at 394, was not an abuse of discretion. Rather, permitting discovery of the Stringer notes would have contradicted "the general policy against invading the privacy of an attorney's course of preparation [that] is so well recognized and so essential to an orderly working of our system of legal procedure." *Id.* at 512, 67 S.Ct. at 394.

Moreover, Horn & Hardart has failed to demonstrate the requisite substantial need and inability to obtain a substantial equivalent for Stringer's notes necessary to overcome work product protection. *See* Fed.R. Civ.P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981). *See also In re John Doe Corp.*, 675 F.2d at 492. The Stringer notes concern the May 14 meeting at which Pillsbury and Horn & Hardart discussed the Diversifoods acquisition and established the negotiation ground rules. Stringer did not himself attend that meeting. Depositions of persons who were actually present at the meeting, taken shortly after the meeting, provide a satisfactory alternative to the notes.

In addition, there is no substantial need for the notes since they would not have aided Horn & Hardart's efforts to satisfy the Statute of Frauds. The deficiencies of the signed writing, discussed above, prevent combination with any unsigned writings under *Crabtree*, including the Stringer notes. *Bazak Int'l*, 538 N.Y.S.2d at 505, 535 N.E.2d at 635. The signed writing must itself establish a contractual relationship and set forth the transaction sufficiently to permit its identification. That is not the case here.

### CONCLUSION

In light of the foregoing, we affirm the judgment of the district court.