**Lynn MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**ALBANY BUSINESS JOURNAL, INC. d/b/a Capital District Business Review, Defendant.**

**No. 90–CV–299.**

United States District Court, N.D. New York.

Jan. 13, 1992.

---

Robert P. Davis, Solicitor of Labor, U.S. Dept. of Labor, New York City (Patricia M. Rodenhausen, Regional Sol., Diane Wade, of counsel), for plaintiff.

Williams & Connolly, Washington, D.C. (John G. Kester, Diana L. Schacht, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

The Secretary of the United States Department of Labor ("DOL") commenced this action in March, 1990 under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (1988) ("FLSA").[1] The DOL alleges that certain reporters at the defendant publisher, the Albany Business Journal ("ABJ"), are entitled to back-pay as compensation for overtime work. Jurisdiction is based on 29 U.S.C. § 217 (1988) and 28 U.S.C. § 1331 (West Supp.1991).

The litigation is now in the discovery phase. This motion addresses various disputes that have arisen concerning the permissible breadth of ABJ's discovery.[2]

---

1. The case was originally brought in the name of then-Secretary of Labor Elizabeth Dole. The current Secretary of Labor, Lynn Martin, has since been substituted as plaintiff pursuant to Fed.R.Civ.P. 25(d)(1).

2. There were originally four motions before the court. The other three motions were:
 (2) By plaintiff, for a protective order quashing notice of deposition, pursuant to Fed. R.Civ.P. 26(c);

## I. STATEMENT OF FACTS

The defendant ABJ publishes the *Capital District Business Review,* a weekly newspaper focussing on business subjects. On March 16, 1990, the DOL filed a complaint in this court against ABJ, alleging that ABJ failed to pay proper "overtime compensation" to its reporters as required by the FLSA. The wages of twelve reporters are at issue. In its answer, ABJ raised as an affirmative defense that the reporters in question were employed in a professional capacity and, as such, were exempt from the FLSA's overtime compensation requirements.[3]

Discovery is now underway. As part of its discovery, ABJ has sought from DOL the identities and statements of ABJ employees (past and present) who were interviewed by DOL representatives. DOL has objected to this discovery, asserting (1) informant's privilege, and (2) work-product privilege. DOL invoked these privileges through an affidavit submitted by John R. Fraser, the Acting Director of the DOL's Wage and Hour Division. DOL concedes that Fraser has "no personal knowledge of the investigation which led to the filing of this civil action." Pl.Mem. in Support of Motion to Quash (3/7/91), at 2-3.

DOL's privilege objections are the basis of its motion now before the court, for a protective order precluding defendant's discovery of the aforementioned information, pursuant to Fed.R.Civ.P. 26(c).[4]

## II. DISCUSSION

Fed.R.Civ.P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action...." (emphasis added). DOL's motion to preclude ABJ from obtaining the identities of, and statements and other written materials provided by, employees (past and present) interviewed by DOL representatives is grounded in the claimed existence of two privileges: (1) informant's privilege, and (2) work-product privilege. The court will discuss *seriatim* the applicability of each privilege to this case.

### A. Informant's Privilege

The "informant's privilege" is the government's evidentiary privilege to withhold the identity of persons who provide the government with information of possible violations of law. *E.g. Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *Brock v. On Shore Quality Control Specialists, Inc.,* 811 F.2d 282 (5th Cir.1987) (citing numerous instances of application in FLSA context); *In re United States,* 565 F.2d 19, 22 (2d Cir.1977), *cert. denied sub nom, Bell v. Socialist Workers Party,* 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). The

---

(3) By defendant, to compel discovery, *to wit* production and responses, pursuant to Fed. R.Civ.P. 37(a); and

(4) By defendant, to recover costs incurred in pursuing its motion to compel discovery, pursuant to Fed.R.Civ.P. 37(a)(4).

Plaintiff has withdrawn its motion (2) to quash, and the parties have resolved between themselves discovery issues entailed in the remaining motions (3 and 4).

**3.** Section 13(a)(1) of the FLSA exempts "professional" employees from the overtime provisions of the Act. FLSA § 13(a)(1), 29 U.S.C. § 213(a)(1). Whether overtime compensation is due or not turns substantially on whether each reporter is employed "in a bona fide ... professional capacity." Therefore, if ABJ's reporters are deemed to be professionals, then they are not entitled to overtime compensation.

**4.** DOL's proposed order requests the court to order that ABJ is precluded from seeking the

following information through any discovery mechanism, *including deposition of ABJ reporters:*

(1) The name, complaint, or statement of any current or former employees of ABJ who may have provided information to the DOL *in relation to the investigation and litigation of this action;*

(2) The contents of or any other information about any communication between any current or former employee of ABJ and any investigative or legal representative of the DOL; and

(3) Any information that would have the effect of identifying any current or former employee of ABJ as having cooperated with or provided information to representatives of the Department of Labor.

Plaintiff's Amended Notice of Motion for Protective Order (filed 2/22/91).

rule "is founded on the proposition that an informer may well suffer adverse effects from the disclosure of his identity." *In re United States,* 565 F.2d at 19.[5] The rule concerning application of the informant's privilege in the Second Circuit is set forth most extensively in *In re United States,* 565 F.2d at 22–24.

The informant's privilege is not absolute. The Second Circuit instructs that "where the identification of an informer or the production of communications is essential to a fair determination of the issues in the case, the privilege cannot be invoked." *In re United States,* 565 F.2d at 22–23 (citing, e.g., *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 627–28). Hence, a case-specific "balancing test" is required to determine whether the privilege may be properly invoked in a given case. *Id.; On Shore,* 811 F.2d at 283.

*1. Invocation of the informant's privilege*

ABJ argues that the court should not even consider DOL's assertion of the informant's privilege because the privilege was not properly invoked. ABJ argues that the informant's privilege can be invoked only by a formal claim of privilege asserted by the head of the department having control over the requested information, in this case the Secretary of Labor. ABJ also argues that the assertion of the privilege must be based upon the actual personal consideration of the facts of this case by the official, and that the official invoking the privilege must explain why the sought information falls within the scope of the privilege. DOL, of course, disagrees and contends that the privilege was properly invoked in this case by Fraser, the Acting Administrator of DOL's Wage and Hour Division.

The question of whether the "formal claim of privilege" requirement applies to the informant's privilege is apparently one

of first impression.[6] At oral argument, the court asked the parties to provide supplemental briefing on the issue of proper invocation of the informant's privilege. The parties have done so. After considering the arguments and case authority on point, the court concludes that the informant's privilege was not properly invoked in this case.

■ ABJ correctly stated the standard for proper invocation of the informant's privilege. In sum, the informant's privilege is properly invoked only when it is asserted by a formal claim of privilege lodged by the head of the department having control over the requested information. The "agency head" may delegate his authority to claim the privilege, but only to a subordinate of high authority, and the delegation must be accompanied by guidelines on the use of the privilege. Finally, the assertion of the privilege must based upon actual personal consideration of the facts by that official. *Cf. Mary Imogene Bassett Hosp. v. Sullivan,* 136 F.R.D. 42, 44 (N.D.N.Y.1991) (Cholakis, J.); *Mobil Oil Corp. v. Department of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.1981) (Munson, C.J.).

The applicability of this stringent standard to the informant's privilege is compelled by a simple syllogism, which in turn is supported by two inescapable premises. The first premise is that the informant's privilege is a governmental privilege. The Supreme Court held so nearly thirty-five years ago in the principal informant's privilege case, *Roviaro v. United States,* 353 U.S. at 59, 77 S.Ct. at 627, when it wrote:

What is usually referred to as the informer's privilege *is in reality the Government's privilege* to withhold from disclosure the identity of persons who furnish information of violations of

5. *See, e.g., Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir. 1972) and *Wirtz v. Continental Finance & Loan Co.,* 326 F.2d 561, 564 (5th Cir.1964), in which the courts extensively described the dangers of revealing an employee/informant's identity in FLSA wage cases.

6. ABJ cites to cases in which the informant's privilege was invoked by a formal claim of privilege; DOL cites to cases in which a formal claim was not asserted. In each of those cases, however, the court merely mentioned the invocation in passing; in none of those cases was the issue of proper invocation of the informant's privilege raised or otherwise actually addressed by the court.

law to officers charged with enforcement of that law.

(emphasis added). Since then, courts having spoken on the issue have also identified the informant's privilege as a governmental privilege. *See Brennan v. Glens Falls Nat'l Bank & Trust,* 75 Lab.Cas. (CCH) ¶ 33,177, at 46, 787, 1974 WL 301 (N.D.N.Y. 1974) (Foley, J.); *Youngblood v. Gates,* 112 F.R.D. 342, 347 (C.D.Cal.1985); *see also Brock v. R.J. Auto Parts and Serv., Inc.,* 864 F.2d 677, 679 (10th Cir.1988) ("government's privilege to withhold the identity of persons providing information ..."). No courts have even remotely suggested that the informant's privilege is anything other than a governmental privilege. This premise (that the informant's privilege is a governmental privilege) is hardly extraordinary; a privilege is a "governmental privilege" simply by virtue of the fact that it is uniquely the government's privilege to assert. *See* Note, *Discovery of Government Documents and the Official Information Privilege,* 76 Colum.L.Rev. 142, 166 (1976), *cited in, e.g., Garber v. United States,* 73 F.R.D. 364, 365 (D.D.C.1976), *aff'd,* 578 F.2d 414 (D.C.Cir.1978). The informant's privilege is one of many governmental privileges.[7]

 Second, all government privileges must satisfy specific, formal requirements for proper invocation. *United States v. O'Neill,* 619 F.2d 222, 225–26 (3d Cir.1980); *Carr v. Monroe Mfg. Co.,* 431 F.2d 384, 388 (5th Cir.1970), *cert. denied sub nom, Aldridge v. Carr,* 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971).[8] This is so regardless of the type of governmental privilege asserted. *O'Neill,* 619 F.2d at 226; *see Coastal Corp. v. Duncan,* 86 F.R.D. 514, 517 (D.Del.1980) (applies to all "executive

privileges"). The formal invocation requirements have been required for invocation of the military secrets privilege, *United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953); the executive privilege, *e.g. Black v. Sheraton Corp. of America,* 564 F.2d 531, 543 (D.C.Cir.1977); the official information privilege, *Garber v. United States,* 73 F.R.D. 364, 364–64 (D.D.C.1976); and the law enforcement investigatory privilege, *In re Sealed Case,* 856 F.2d 268, 271 (D.C.Cir. 1988). Two courts within this district have applied the requirements to the deliberative processes, or predecisional, privilege. *Mary Imogene Bassett Hosp. v. Sullivan,* 136 F.R.D. 42, 44 (N.D.N.Y.1991) (Cholakis, J.); *Mobil Oil Corp. v. Department of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.) (Munson, J.), *rev'd on other grounds,* 659 F.2d 150 (T.E.C.A.), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

The conclusion that these two premises yields is that the informant's privilege, being a governmental privilege, is subject to the aforementioned strict requirements for formal invocation. *See* standards delineated at p. 6; *Reynolds,* 345 U.S. at 7–8, 73 S.Ct. at 531–32. The rationale behind the judiciary's imposition of a formal claim requirement for assertion of governmental privileges seems obvious enough. Courts need to ensure that the claim is invoked by an official with political accountability and responsibility. In 1982, the Southern District of New York expounded upon the rationale behind the formal claim requirement, when it wrote:

> These are not merely technical requirements. Rather, their purpose is to insure that the privilege is claimed by

---

**7.** To that end, DOL's argument that the informant's privilege is an evidentiary privilege, and not a governmental privilege, is without merit. As ABJ correctly notes, *all* privileges are by nature evidentiary privileges. The informant's privilege is obviously an evidentiary privilege, but it is also a governmental privilege. As such, the informant's privilege is subject to the rules governing governmental privileges.

**8.** DOL argues that cases such as *O'Neill* are inapposite because they involve governmental entities other than the federal government.

DOL's distinction is without merit. The court in *O'Neill* in no manner suggested that its decision was based in part on the fact that the governmental entity therein was a city, as opposed to the federal government. Moreover, the Third Circuit in *O'Neill* relied exclusively on federal case law with respect to governmental privileges. The informant's privilege applies to governmental privileges asserted in federal court; there is no satisfactory justification for distinguishing between governmental entities when reviewing invocation of the privilege.

someone in the executive branch with sufficient authority and responsibility so that the court can rely upon his judgment that the claim was prudently invoked.... At the very least, the executive officer must represent that he has personally considered the matter. It goes without saying that failure to do so will preclude the court from further considering the claim of privilege.... In general, there has been little judicial flexibility in relaxing these formal requisites.

*National Lawyers Guild v. Attorney General,* 96 F.R.D. 390, 396 (S.D.N.Y.1982) (citations omitted) (footnote omitted) (military secrets context). *See O'Neill,* 619 F.2d at 226–27 (need for careful executive review).

Only by mandating that an accountable executive official invoke a governmental privilege can the courts be confident that the privilege is responsibly asserted based on agency goals and policies, and is not abused for litigation purposes. *Coastal Corp.,* 86 F.R.D. at 518; *Pierson v. United States,* 428 F.Supp. 384, 395 (D.Del.1977). The District of Delaware most concisely summarized the rationale behind the formal claim requirement, stating:

> [r]equiring the agency head to claim the privilege assures the Court, which must make the ultimate decision, that [the] executive privilege has not been lightly invoked by the agency ..., and that in the considered judgment of the individual with an overall responsibility for the ad-

ministration of the agency, the documents withheld are indeed thought to be privileged.

*Coastal Corp.,* 86 F.R.D. at 518 (citation omitted) (executive privilege context).[9] The formal claim requirements may be harsh, but governmental privileges are not to be lightly invoked; after all, they effectively deny an adversary the opportunity to inquire into perhaps dispositive areas of fact. *Pierson,* 428 F.Supp. at 395–96.

DOL's efforts to distinguish the informant's privilege from other governmental privileges are laudible but not persuasive. DOL's argument that the formal claim requirement is only required for cases involving absolute governmental privileges is unavailing, for it flies in the face of the unambiguous case precedent to the contrary. *See Mary Imogene Bassett Hosp.,* 136 F.R.D. at 45, and *Mobil Oil Corp.,* 520 F.Supp. at 417, in which Judges Cholakis and Munson required formal invocation of a *qualified* privilege. There is absolutely no reasonable indication in any case that the informant's privilege, as a governmental privilege, should be treated differently from all of the other governmental privileges.[10] Furthermore, the policy behind the formal claim requirement seemingly applies with equal force to the informant's privilege. Therefore, the court concludes that the formal invocation requirement of governmental privileges applies to the informant's privilege.

---

9. In *Pierson,* the court noted that the "agency head" requirement also protects the court and adversary from the understandably clouded judgment of agency attorneys who seek to invoke the privilege:

> To permit any government attorney to assert the privilege would derogate [the purposes behind the formal claim requirement]. It would be extremely difficult to develop a consistent policy of claiming the privilege. Moreover, the judgment of attorneys engaged in litigation is very likely to be affected by their interest in the outcome of the case. *See Thill Securities Corp. v. New York Stock Exch.,* 57 F.R.D. 133, 138 (E.D.Wis.1972). It is of the greatest importance that the privilege be invoked only when the policies it seeks to encourage are seriously threatened. Requiring the agency head to review the documents sought and to claim the privilege where ap-

> propriate is the most effective method to assure consistency and prudence.

*Pierson,* 428 F.Supp. at 395.

10. *But see Kinoy v. Mitchell,* 67 F.R.D. 1, 11 n. 36 (S.D.N.Y.1975), in which the Southern District of New York stated in *dicta* that "a claim asserted solely to protect the identity of informers ... may be lodged by any representative of the Government." This superfluous statement was buried in a footnote toward the end of the decision, and was supported by no legal authority. Despite exhaustive research, this court has been unable to locate even a shred of legal authority to support the Southern District's blanket assertion. In light of the strong logic demanding a contrary result, the court chooses to reject the *Kinoy* dicta as mere speculation on an issue not before that court for review.

Of course, the head of the relevant governmental agency cannot be expected to learn the facts of every single case in which his agency seeks to invoke a governmental privilege. Such a requirement could bring the government to a virtual stand-still. *See Wirtz v. Atlantic States Constr. Co.*, 357 F.2d 442, 446 (5th Cir. 1966); *Founding Church of Scientology, Inc. v. Director, F.B.I.*, 104 F.R.D. 459, 465 (D.D.C.1985). Therefore, courts have allowed agency heads to delegate their authority to invoke governmental privileges, but subject to tight restrictions. A head of an agency may delegate his authority only to a high level subordinate/delegatee, and only so long as the delegation is accompanied by guidelines on the use of the privilege. The requirement that delegation be restricted to high-level subordinates ensures that the delegatee official "has sufficient expertise in the agency's operations and functions" to be able to render a well-informed decision on whether to invoke the privilege in a given case. *Mobil Oil*, 520 F.Supp. at 416. In other words, limiting the agency head's ability to randomly delegate authority ensures that the purpose behind the formal invocation requirement is not eviscerated by delegation.

■ Turning to the present case, it is clear that the agency head responsible for invoking the privilege—or else delegating the authority to invoke the privilege—would be the Secretary of Labor, Lynn Martin. DOL suggests that the agency involved here is not DOL, but instead is the Wage and Hour Division of DOL, and that Fraser, as the Acting Administrator of the division, is the "agency head" empowered to assert the privilege. There is no compelling authority to support that argument. The Wage and Hour Division's enabling statute, codified at 29 U.S.C. § 204 (1988), states only that the Wage and Hour Division is a "division" of the DOL (which all parties agree to be an agency). There is no indication from the statute or elsewhere

that a division of an agency is itself a separate agency, and the court is not willing to take that leap. To the contrary, it would seem that a division of an agency cannot by common logic also be considered an agency, since a division is by definition less than a whole. Since the Wage and Hour Division is not itself an agency, the administrator thereof is not the head of an agency, and is therefore not empowered to invoke an evidentiary privilege on behalf of the government.[11]

■ The inquiry does not end there, however, because the court finds that Fraser is an official to whom the Secretary of Labor could properly delegate her authority to assert the privilege. This is because Fraser meets the criteria of being a "high level subordinate/delegatee" of the Secretary of Labor. In *Mary Imogene Bassett Hosp.*, Judge Cholakis provided some insight into this ambiguous requirement when he noted that an administrator who is appointed by the President and confirmed by the Senate qualifies as a "high-level subordinate." 136 F.R.D. at 44–45. Under the Wage and Hour Division enabling statute, the Administrator of the Wage and Hour Division must be appointed by the President and confirmed by the Senate. 29 U.S.C. § 204. Therefore, under Judge Cholakis's rationale (which the ABJ cites as persuasive), the Administrator of the Wage and Hour Division would be considered a high-level subordinate.

■ ABJ contends that Fraser is not a high-level subordinate because he is not the Administrator of Wage and Hour Division, but rather is only the *Acting* Administrator. ABJ's contention notwithstanding, Fraser's status as an acting administrator does not diminish his capacity to act as a high-level subordinate. Congress made that abundantly clear when it enacted the provisions codified at 5 U.S.C. § 3346 (1988).[12] As the acting administrator, Fra-

---

11. As will be discussed below, even if the Wage and Hour Division is an agency, the informant's privilege still was not properly invoked in this case, because Fraser was not personally familiar

with the facts of the case before invoking the privilege. *See infra* pp. 935–936.

12. 5 U.S.C. § 3346 states:

ser is empowered to perform the administrator's duties. *See Id.* In light of Congress's intent to vest an acting administrator with the authority of an administrator, the court must conclude that Fraser, as acting administrator, assumes the administrator's role as a high-level subordinate to whom authority to invoke the informant's privilege could be properly delegated.

■ Even though Fraser is a proper delegate, his invocation of the privilege in this case was flawed, for two reasons. First, the delegation of authority to Fraser by the Secretary of Labor was so vague and amorphous that it did not provide Fraser with the requisite standards by which he should determine whether to invoke the privilege. At minimum, the guidelines must be of sufficient specificity to fulfill the interests behind requiring participation of the agency head in the invocation. *Coastal Corp.*, 86 F.R.D. at 518 (citing *Amoco Prod. Co. v. Department of Energy*, 1 Energy Mgmt. (CCH) ¶ 9752, at 9930 n. 16 (D.Del.1979)). The guideline requirement is indispensable because it ensures that the privilege is invoked consistently, *see Pierson*, 428 F.Supp. at 395, and that the delegatee official will be able to render decisions based on privileged information after reasoned judgment. *Mobil Oil*, 520 F.Supp. at 416; *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 44 (N.D.Tex.1981). A delegation of authority which is devoid of even a mention of invocation of privileges is plainly insufficient to fulfill the purposes of the formal claim requirement. *See Mobil Oil*, 520 F.Supp. at 416. Absent a proper delegation of authority, *i.e.* a delegation accompanied by guidelines for invoking governmental privileges, a high-level subordinate is not empowered to assert a privilege on behalf of the government. *Mobil Oil*, 520 F.Supp. at 416.

In its supplemental brief, DOL points to orders promulgated by the Secretary of Labor as being sufficient to delegate to the Wage and Hour Administrator her authority to invoke privileges. Review of the orders proffered, however, shows mere blanket delegations of the Secretary's responsibilities to act on particular issues. There is absolutely no guidance for determining whether to invoke the informant's privilege—or for that matter any other governmental privilege—in a given case. Since the orders lacked the requisite standards, they are improper to the extent that they purport to delegate authority to invoke the informant's privilege. *See id.*

■ Even if the delegation here were proper, Fraser still has not properly invoked the privilege, because he did not personally review the facts of this case before submitting his affidavit. Like the delegation requirement, personal review of the facts by the official invoking the privilege is critical to fulfilling the purposes behind the formal claim requirement. Individual review of cases ensures "that the privilege is presented in a deliberate, considered, and reasonably specific manner," *In re Sealed Case*, 856 F.2d at 271, and that the official invoking the privilege "believes in good faith that the harm of disclosure will overcome the obvious relevance to the litigation and the very substantial need of the litigant." *Pierson*, 428 F.Supp. at 395–96. The court cannot allow the privilege to stand unless the official states the reasons why the informant's privilege is necessary in this particular case.

As mentioned above, DOL readily acknowledges that Fraser had no personal knowledge of the facts of this case when he invoked the informant's privilege. *See* Pl.Mem. in Support of Motion to Quash (3/7/91), at 2–3. DOL asserts personal

---

When an officer of a bureau of an Executive department or military appointment, whose appointment is not vested in the head of the department, dies, resigns, or is sick or absent, his first assistant, unless otherwise directed by the President under section 3347 of this title, shall perform the duties of the office until a successor is appointed or the absence or sickness stops.

This statute applies to the role of Fraser in this case, because (1) the administrator's appointment is not vested in the head of the department (*see* 29 U.S.C. § 204—vested in President with advice and consent of Senate), and (2) Fraser was the administrator's first assistant.

review is not required because the reason for invoking the informant's privilege, unlike other privileges, is the same in every instance: to protect the identity of informants. DOL's argument is not convincing. Fraser's blind assertion of the privilege here totally defeats the purpose behind the formal claim requirement. Instances may arise in which the informant's privilege need not be invoked, or that it need be only partially applied. In those cases, it would be highly improper for the Fraser to assert that a blanket privilege is needed to protect the identity of all informants. Only by personally reviewing each case can Fraser know when the privilege must necessarily be applied. The court acknowledges that the personal review requirement is burdensome, but it is also necessary to ensure against abuse of the privilege. In a democracy, governmental privileges must not be lightly invoked.

In sum, the court finds that the informant's privilege is a governmental privilege to which the formal invocation requirements apply. DOL has not properly invoked the informant's privilege in this case. Therefore, DOL cannot rely upon the privilege as a basis for precluding ABJ's discovery of the information sought. DOL's motion for a protective order is denied without prejudice insofar as it relies upon the informant's privilege, pending proper assertion of the privilege.

### 2. Assuming proper invocation of the informant's privilege

As will be discussed *infra*, DOL's alternative ground for precluding ABJ's discovery—*to wit* the work product privilege—cannot be resolved without an evidentiary hearing. *See infra* pp. 941–943. Hopefully an evidentiary hearing will not be necessary. DOL can move this case along by properly asserting the informant's privilege. This is because the court finds that but for its improper assertion, the informant's privilege could be used to preclude ABJ from discovering the requested information. The parties have thoroughly briefed the court on the applicability of the informant's privilege in this case. In an attempt to help the parties avoid expending

more time and resources on more discovery hearings, the court will discuss why the informant's privilege, if properly invoked, will bar ABJ's proposed discovery in this case.

### a. ABJ's procedural objections

As mentioned above, the informant's privilege requires a balancing of interests to determine whether the privilege is appropriate in a given case. Before applying the balancing test, however, the court must address and dispose of ABJ's "other" objections to DOL's use of the privilege. The court notes at the outset the considerable case precedent in which the informant's privilege has been applied to FLSA cases remarkably similar to the present. *See, e.g., Brock v. Gingerbread House*, 907 F.2d 115 (10th Cir.1989) (and cases cited therein); *On Shore*, 811 F.2d 282 (5th Cir.1987) (and cases cited therein); *see also* Plaintiff's Memorandum of Law in Support, at 7 & *passim*. In one FLSA case, Judge Foley allowed DOL's use of the privilege in the Northern District of New York to preclude discovery of employees' identities. *Brennan v. Glens Falls Nat'l Bank & Trust*, 75 Lab.Cas. (CCH) ¶ 33,177 (N.D.N.Y.1974). Even without the strong precedent favoring application of the privilege, however, the court would still be compelled to reject ABJ's procedural objections to application of the privilege in the present case.

### (i) Applicability of privilege to civil cases

■ ABJ first suggests that the informant's privilege may be inapplicable to civil cases. Defendant's Memorandum of Law in Opposition, at 16. ABJ's contention flies directly in the face of the multitude of cases which have already applied the informant's privilege to civil FLSA cases like the case at bar. *See, e.g.,* cases cited *supra* p. 936.

Defendant cites, *inter alia, dicta* written in *Brennan v. Automatic Toll Sys.*, 60 F.R.D. 195, 196 (S.D.N.Y.1973), to support its argument. The *dicta* in that 1973 district court case has since been unequivocally rejected by the Second Circuit in *In re*

*United States,* 565 F.2d at 22 (albeit also in *dicta* ). There the court expressly stated that "[t]he doctrine of informer privilege is applied in civil cases as well as criminal ... and limits the right of disclosure under Rule 34 of the Federal Rules of Civil Procedure." *Id.* (citations omitted). ABJ has even acknowledged that Judge Foley applied the informant's privilege in a civil FLSA case litigated in this district. Defendant's Memorandum of Law in Opposition, at 17 n. 13 (citing *Glens Falls Nat'l Bank,* 75 Lab.Cas. (CCH) ¶ 33,177).

As noted by the Fifth Circuit in *On Shore Quality Contr.,* 811 F.2d at 283, it is now well-settled throughout the country that the informant's privilege is applicable in civil FLSA cases. Since ABJ's argument contradicts the dozens of civil FLSA cases in which the informant's privilege was allowed, its suggestion is without merit.

### (ii) The reporters in question are not covered by the privilege

 ABJ next contends that the employees whose identities and statements are sought are not "informants" within the scope of the privilege, and hence the privilege cannot be invoked on their behalf to prevent disclosure. ABJ relies on *Gordon v. United States,* 438 F.2d 858, 875 (5th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 142, 30 L.Ed.2d 56 (1971), and *United States v. Miller,* 499 F.2d 736, 741 (10th Cir.1974), to argue that the privilege does not cover a witness who supplies information only after being interviewed by government officials. ABJ suggests that the privilege applies only to the identity of people who voluntarily bring confidential information to the government, *i.e.* people commonly referred to as "whistle blowers."

ABJ's own cases defeat its argument. ABJ failed to note that in *Miller,* the Tenth Circuit further wrote, "[w]e disagree with appellant's contention that the sole criterion for determining whether a witness is an informer is whether he comes forward voluntarily.... [T]he fact that the witness has come forward voluntarily should not in our view be the sole criterion for classifying him as an informer." *Miller,* 499 F.2d

at 741. As for ABJ's reliance on the Fifth Circuit's 1971 *Gordon* decision, the same court rejected the very distinction ABJ now seeks to draw, in its 1987 *On Shore* decision. In *On Shore,* the Fifth Circuit wrote:

> The same interests that militate against divulging the names of "informers" militates equally against divulging the names of "those who have given information," and leaving to the employer the identification of displeasing informants.... "[T]he purpose for allowing the informer's privilege ... is to make retaliation impossible." This purpose remains intact even where a list of informers is included within a somewhat larger list containing some persons who spoke with the authorities but who did not complain.

*On Shore,* 811 F.2d at 284 (citations omitted).

The "interest" behind the informant's privilege, *see id.,* is to protect members of the public who present valuable information to the government during an investigation from suffering retaliation at the hand of parties implicated in the investigation. Any person who assists an investigation can benefit from the privilege. Given the protective purpose of the informant's privilege, ABJ's purported distinction between "informants" and "people who give information" is inapposite.

### b. Balancing of Interests

Having addressed and disposed of ABJ's procedural arguments against application of the informant's privilege, the court must balance the parties' respective interests to determine whether the privilege should apply in this particular case. The burden lies with ABJ to prove a specific and justifiable need for the discovery sought. *E.g. In re United States,* 565 F.2d at 23.

### 1. DOL's interests

DOL's argument begins with a statement of the public's interest in effective enforcement of the FLSA. DOL notes the Supreme Court's recognition that Congress implemented few enforcement provisions in the FLSA, choosing instead to rely upon

information brought by employees seeking to vindicate rights claimed to have been denied. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 335–36, 4 L.Ed.2d 323 (1960). Therefore, effective enforcement of FLSA cannot be expected unless employees participate in enforcement. *Mitchell*, 361 U.S. at 292, 80 S.Ct. at 335–36. Employees contacted or interviewed by DOL investigators are therefore often given pledges of confidentiality to encourage their participation in wage and hour investigations. Pl.Mem. at 10; Fraser Aff. (1/29/91) at ¶ 6.

Given the employees' expectations of confidentiality and DOL's need for employee cooperation in effective enforcement of FLSA, the court must also be vigilant of the danger of retaliation against employees who may have reported possible wage and hour improprieties at ABJ. The Second Circuit has noted some of the pressures that an informant can expect to encounter:

> [T]he likelihood of physical reprisal is not a prerequisite to the invocation of the privilege. Often, retaliation may be expected to take more subtle forms such as economic duress, blacklisting or social ostracism. The possibility that reprisals of some sort may occur constitutes nonetheless a strong deterrent to the wholehearted cooperation of the citizenry which is a requisite of effective law enforcement.
>
> Courts have long recognized, therefore, that, to insure cooperation, the fear of reprisal must be removed and that "the most effective protection from retaliation is the anonymity of the informer."

*In re United States*, 565 F.2d at 22 (citations omitted).

The Fifth Circuit has warned that the danger of retaliation is especially acute in the employment setting. That court observed, "[t]he economic relationship of employer-employee makes possible a wide range of discriminatory actions from the most flagrant to those so subtle that they may scarcely be noticed.... The purpose for allowing the informer's privilege in such a case ... is to make retaliation impossible...." *Continental Finance*, 326 F.2d at 564 (further stating that employees are "particularly susceptible to the fear of retaliation").[13] As mentioned above, employees aware of these repercussions often require assurances of anonymity as a condition to giving statements, to protect against possible reprisals or discrimination by their employers. Pl.Mem. at 10; Fraser Aff. (1/29/91) at ¶¶ 4–6.

### 2. ABJ's interests

ABJ carries the burden to prove a specific need for discovery which supersedes the need for an informant's privilege. *See In re United States*, 565 F.2d at 23. ABJ's strongest interest in obtaining the reporters' identities and statements derives primarily from its position that the information sought "goes to the heart of the issues" in DOL's case, and therefore ABJ's substantive need for the information outweighs DOL's "policy" concerns. To that end, ABJ submits that its entire defense will turn on whether the particular employees at issue are exempt because they are deemed "professionals." Def.Mem. at 23.[14] *See* FLSA § 13(a)(1), 29 U.S.C. § 213(a)(1). Whether the reporters are professionals depends in large part upon the nature of their particular duties. *See* 29 C.F.R. § 541.3.[15]

---

13. The Fifth Circuit has also recognized that the danger is not significantly diminished for former employees who reveal information. "The possibility of retaliation ... is far from being 'remote and speculative' with respect to former employees." *Charles Martin Inspectors*, 459 F.2d at 306 (extensive discussion of retaliatory steps that employers can take against former employees).

14. ABJ writes, "[u]nlike most FLSA cases, the issue here is not whether or how overtime was paid to these reporters. Concededly [the reporters] did not receive overtime pay, because their

employer believes that as professionals they were not legally entitled to it under the statute. The case turns entirely on the issue of their professional status." Defendant's Memorandum of Law in Opposition, at 23.

15. According to the pertinent federal regulation, the definition of "professional employee" depends heavily on, *inter alia,* the nature of the particular employee's duties, responsibilities, wages, and (in certain instances) education. *See* 29 C.F.R. § 541.3 (codified definition of "employee employed in a bona fide ... professional capacity").

The argument runs that unless ABJ knows specifically *which* employees' wages are at issue, it cannot determine whether they are exempt from the FLSA's provisions. ABJ recites the Southern District of New York's query, "How can the defendants defend if they do not know what to defend against?" *Brennan v. Automatic Toll Systems, Inc.,* 60 F.R.D. 195, 196 (S.D.N.Y.1973), *cited in* Defendant's Memorandum of Law in Opposition, at 27.

The case law is clear that if ABJ can obtain the same information without necessitating a waiver of the informant's privilege, then a waiver should not be granted. *E.g. Brock v. R.J. Auto Parts and Service,* 864 F.2d 677, 679 (10th Cir. 1988) ("particular need" requirement); *Brennan v. Engineered Prod.,* 506 F.2d 299, 303 (8th Cir.1974) ("substantial need" requirement); *Glens Falls Nat'l Bank,* 75 Lab.Cas. (CCH), at ¶ 33,177 (N.D.N.Y.1974) (Foley, J.). A review of the circumstances giving rise to DOL's case and ABJ's own arguments indicates that ABJ is not as far "in the dark" as it suggests.

As the employer, ABJ (presumably) determines the nature of its employees' duties. Of anybody, ABJ would have the information necessary to determine its employees' professional status. ABJ has failed to state how discovery of the employees' names or statements would yield information other than what it already has to assist it in determining the nature of its reporters' employment at ABJ. Even if the court were to accept ABJ's argument that the reporters' "descriptions and characterizations of [their own] duties ... are essential evidence in this case," *see* Defendant's Memorandum of Law in Opposition, at 23–26, ABJ has not stated why it cannot obtain this information on its own, by simply speaking to its employees as the investigator did. Such an investigation would not be unduly burdensome considering that the wages of only twelve reporters are at issue.

Furthermore, DOL has acknowledged its obligation to disclose its witness list, informant/employees included, before trial on the merits. Any unfair prejudice can be addressed at that time. Indeed, at least one court relied upon the prospect of witness-list disclosure to uphold use of the informant's privilege during the discovery stage of a similar FLSA case. *See Brock v. J.R. Sousa & Sons,* 113 F.R.D. 545 (D.Mass.1986) (citing *United States v. Hemphill,* 369 F.2d 539, 542 (4th Cir.1966)). ABJ, in sum, has not satisfied the court that it needs a waiver of the informant's privilege to discover all of the information it seeks.

ABJ submits in the alternative that even if the court precludes discovery of the particular employees' identities, it can still compel disclosure of their statements, but with references to identity redacted from the documents. It is true that the leading Supreme Court case discussing informant's privilege clearly instructs that the privilege is limited to the informant's identity and does not extend to protect their statements. *Roviaro,* 353 U.S. at 60, 77 S.Ct. at 627–28. This rule must be read in conjunction with Fed.R.Civ.P. 26(b)(1), however, which limits discovery to matters not privileged which are reasonably calculated to lead to the discovery of admissible evidence.

In order for the informant's privilege to have any effect, redaction of an employee's statement would have to entail removal of not merely the employee's name, but also anything—including the particular job description—that could reasonably lead to discovery of that employee's identity. ABJ's request for the court to order disclosure of such heavily redacted statements seems strangely inconsistent with its earlier stance regarding its need for disclosure. Specifically, ABJ argued that the statements are needed for their descriptions of the duties of the *particular* employee, to determine his/her professional status. *See* Defendant's Memorandum of Law in Opposition, at 23–26. Since names and job descriptions would have to be redacted, the remaining statements would be gutted of their probative value as assessed by ABJ. In other words, ABJ has not satisfied its burden of showing the relevance of redacted statements that do not describe the speaker. *See, e.g., United States v. Inter-*

*national Bus. Mach. Corp.,* 66 F.R.D. 215, 218 (S.D.N.Y.1974) (burden is on moving party to establish relevance). Since "[d]isclosure should not be directed simply to permit a fishing expedition," *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974), the court is not swayed by ABJ's compromise request for statements with identities redacted.

■ The rationale behind the informant's privilege is such that ABJ is not entitled to discover the names of or statements given by reporters who spoke to DOL investigators during the probe into possible wage improprieties at ABJ. The government has the authority to invoke the privilege, even at third-party depositions. *See In re United States,* 565 F.2d at 22 ("[b]y withholding the identity of the informer, *the government* profits ...) (emphasis added). How the rule specifically affects depositions was described by the District of Massachusetts in *J.R. Sousa:*

> The defendants may not ask the employees at depositions whether or not they completed a questionnaire for the plaintiff and they may not ask whether or not they ever provided any information to the plaintiff. Rather, they may ask the employees about the facts with respect to the circumstances of his or her employment during the time periods when the violations are alleged to have occurred with respect to that particular employee and may ask the employees the same questions which the plaintiff asked the employees on the questionnaire.

113 F.R.D. at 547–48. Similarly, it seems that ABJ can properly learn, through discovery of the DOL investigators, exactly what questions were asked of the employees (without, of course, learning identities of the employees), and then ask many of the same questions in depositions of the employees. This method was recognized as acceptable in *J.R. Sousa.* In so acting, ABJ can ascertain the information it purports to need without violating the spirit of and/or policy behind the informant's privi-

lege. The informant's privilege, however, still prohibits ABJ from inquiry related to the employees' contact with DOL investigators.

### c. Waiver of the Privilege

■ The informant's privilege is waived when the moving party legitimately learns the identity of the informant at issue. *E.g. Roviaro,* 353 U.S. at 60, 77 S.Ct. at 627, *New York v. Cedar Park Concrete Corp.,* 130 F.R.D. 16, 21 (S.D.N.Y.1989). This is because once the identity of the informer is revealed to the party likely to cause the harm, the purpose behind maintaining the privilege as to their statements is defeated. *Roviaro,* 353 U.S. at 60, 77 S.Ct. at 627, *Westinghouse Elec. Corp. v. City of Burlington,* 351 F.2d 762, 768 (D.C.Cir.1965).

■ Counsel to ABJ avers that ABJ has already learned the identity of five employees who gave statements to DOL. Defendant's Memorandum of Law in Opposition, at 31.[16] Since the informant's privilege applies only to the informant's identity and not to their statements, *e.g. Roviaro,* 353 U.S. at 59, 77 S.Ct. at 627, ABJ argues that DOL cannot assert the privilege as to the statements of those five employees.

Without questioning the truth of ABJ's assertion, the court finds that a waiver has not occurred here. While it is true that the informant's privilege technically extends only to the identity of an informant and not to a known informant's statement, ABJ does not know whether the five employees were "informants" *per se.* This is because ABJ does not know whether any of the five employees spoke disparagingly about ABJ and are thus in need of the protection afforded by the informant's privilege. That ABJ knows the identities of reporters who merely spoke to DOL is not tantamount to knowing whether those reporters are "informers" within the rubric of the privilege. This important distinction was articulated by the Fifth Circuit in *Charles Martin Inspectors:*

---

**16.** Those employees are: James Denn, Timothy Cavanaugh, William Stoneman, Celia Wexler, and William Larson.

Knowing the identity of persons who have given statements to the Secretary is not equivalent to knowledge of which of those persons were informers within the context of the privilege. Only when the content of the statement is disclosed will it be revealed whether the information was given reluctantly or voluntarily, whether the tone and manner in which it was given was friendly to the defendant or unfriendly, and whether it was accusatory or favorable. In short, if the employee is not known to the defendant as an informer but merely as a statement giver, then disclosure of the statement might reveal him as an informer.

459 F.2d at 306 (citations omitted).

Disclosure of the five employees' statements would reveal to ABJ for the first time whether any of the five were "informers," *i.e.* speakers who implicated ABJ, as opposed to mere "statement givers." *See id.* Such a disclosure would defeat the very purpose of the informant's privilege. Since ABJ does not know which of the five employees were "informers" as that term relates to the informant's privilege, *see id.,* there has been no waiver of the informant's privilege as to their statements. Accordingly, ABJ is not entitled to disclosure of their statements.[17]

### B. Work Product Privilege

The federal work-product privilege is set forth in Fed.R.Civ.P. 26(b)(3). The privilege provides, in pertinent part, that materials prepared in anticipation of litigation by an attorney or his/her agent(s) are subject to a qualified privilege from discovery.[18] This court has adopted a three-pronged threshold test for measuring the applicability the work-product privilege. *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.,* 125 F.R.D. 578, 586 (N.D.N.Y.1989) (McCurn, C.J.). For the privilege to apply, the material sought must be:

(1) a document or tangible thing(s);

(2) prepared in anticipation of litigation; and

(3) prepared by or for a party, or by or for his representative.

*Id.*

 There is a factual dispute as to whether DOL can satisfy the second threshold prong, *i.e.* that the statements were taken in preparation for litigation. At first glance, it appears that DOL has at least implicitly conceded that statements taken during the ABJ investigation were not taken in preparation for litigation. Most notably through the affidavit of Administrator Fraser, DOL asserts that litigation is not generally considered until *after* investigations are complete. Fraser, for example, averred that "[i]nvestigations disclosing violations of the Act in which legal enforcement action appears appropriate are referred to the Solicitor of Labor for civil suit or, if sufficiently serious, for transmission to the Department of Justice for criminal prosecution." Fraser Aff. (1/29/91), at ¶ 4. In other words, matters are seemingly not considered for litigation until *after* investigations reveal violations.

Fraser's apparent concession would be consistent with the statutory scheme of the FLSA, which dictates that the DOL's Wage and Hour Division may investigate any industry subject to the Act for FLSA viola-

---

**17.** As noted in *Charles Martin,* the Eighth Circuit's decision in *Mitchell v. Bass,* 252 F.2d 513 (8th Cir.1958) is distinguishable because there the employees' identities *as informers,* and not merely as "persons who have given statements," had been voluntarily revealed by the government. Since the employer in *Bass* knew to some extent the content of the employees' statements, valid waiver of the informant's privilege had been effectuated. *See Charles Martin,* 459 F.2d at 307.

**18.** Fed.R.Civ.P. 26(b)(3) specifically states:
(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule [re: expert witnesses], a party may obtain discovery of documents and tangible things otherwise discovered under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant ... or agent), *only* upon a showing that the party seeking discovery has *substantial need* of the materials in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

tions, even without suspicion of improprieties. FLSA § 11(a), 29 U.S.C. § 211(a). Moreover, the ABJ President, George Guthinger, has averred that the DOL representative who conducted the ABJ investigation informed him that DOL's investigation was a part of a "random" audit. Guthinger Aff. (1/11/91), at ¶ 3. The statements of the five employees whose identities are known by ABJ were taken during this allegedly random investigation. Certainly a generalized inquiry into the wage and hour practices of a particular business would not be considered "in anticipation of litigation," when there is not yet even a suspicion of improprieties. *Cf. Horn & Hardart Co. v. Pillsbury*, 888 F.2d 8, 12 (2d Cir.1989) (Second Circuit requirement that material be prepared "with an eye toward litigation").

The court was prepared to hold that the statements sought by ABJ here were not taken in anticipation of litigation, and thus not covered by the work product rule, until the end of oral argument. Just before the court adjourned, DOL's counsel made the following statement to the court:

> There is a statement in respondent's brief at page 45 with respect to Mr. Guthinger's affidavit which purports to represent a conversation with the investigator from the Wage and Hour Division, and I don't think this is a tremendously important point that the defendant is making, which is that Mr. Guthinger claims that he was told there was no complaint in this case, and somehow that bears on the work product privilege. But I just want to state for the record, so no one is left with a misapprehension, that we do dispute Mr. Guthinger's affidavit that that conversation took place as it was described.

Transcript (Oral Argument (9/16/91)) at 33–34.

Contrary to counsel's assumption, DOL's dispute *does* have a bearing on the applicability of the work product privilege, for it places into question whether the investigation at issue here was random, as opposed to being conducted in preparation of litigation. The application of the work product privilege here depends entirely on whether the statements were taken during an investigation that was conducted pursuant to a specific claim of impropriety. *See, e.g., Horn & Hardart*, 888 F.2d at 12.

DOL points to several FLSA cases that it feels are dispositive of this matter. In those cases, various district courts have used the work-product doctrine to preclude discovery of employees' statements. *See* Pl.Mem. at 26–27 (citing six district court cases, none from within the Second Circuit). With one exception, *see infra*, the courts in each of the cited cases immediately presumed, without elaboration, that the materials sought in those cases were prepared in anticipation of litigation. Despite their ultimate holdings, those cases are of little precedential value here because they simply do not address ABJ's persuasive argument that the investigative materials here were not prepared in anticipation of litigation.

The single case cited by DOL offering some explanation in support of its work-product argument entailed a case-specific holding that is necessarily distinguishable from case at bar. In *McLaughlin v. Miles Laboratories, Inc.*, 124 F.R.D. 629, 630 (N.D.Ind.1988), perhaps unlike the present case, DOL initiated a wage and hour investigation, and took statements pursuant thereto, in preparation for litigation. The court specifically noted that "there existed, from the initiation of the investigation, a specific claim of back-wages owed and it was incumbent upon the DOL's investigator to conduct the investigation with an eye toward ultimate prosecution of [the employer]." *Miles Laboratories*, 124 F.R.D. at 631. To be sure, the court stated in conclusion that its decision to apply the work-product privilege was "[i]n light of the existence of a *specific claim* of back wages owed at the time of the investigator's work." *Id.* (emphasis added).

In sum, none of the cases relied upon by DOL are dispositive of this case. The only way that the court can determine whether the work product privilege is applicable here is to hold an evidentiary hearing to resolve the apparent factual dispute of

whether the statements at issue here were taken by DOL investigators "with an eye toward litigation," *i.e.* in preparation for litigation. *Horn & Hardart*, 888 F.2d at 12. If the statements were taken in preparation of litigation, then the work product privilege will apply to preclude ABJ's discovery of the identity and statements of the ABJ employees.

As mentioned above, DOL may take measures to avoid the unnecessary burden of an evidentiary hearing, by attempting to properly assert the informant's privilege. Alternatively, DOL may request an evidentiary hearing, after which the court will determine the applicability of the work product privilege.

### III. CONCLUSION

DOL's motion for a protective order is denied without prejudice insofar as it relies upon the informant's privilege, pending proper assertion of the privilege. DOL's motion for a protective order insofar as it relies on the work product privilege is also denied without prejudice, pending an evidentiary hearing on the matter. Discovery as to the identities and statements of ABJ employees (past and present) who were interviewed by DOL representatives is stayed for sixty (60) days to afford DOL an opportunity to proceed in accordance with the court's direction herein. In the event DOL elects not to so proceed, DOL shall provide the requested identities and statements.

IT IS SO ORDERED.