OPINION OF THE COURT
Kaye, J.
This dispute between textile merchants concerning an alleged oral agreement to sell fabric centers on the "merchant’s exception” to the Statute of Frauds (UCC 2-201 [2]). We conclude that annotated purchase order forms signed by the buyer, sent to the seller and retained without objection, fall within the merchant’s exception, satisfying the statutory requirement of a writing even without the seller’s signature. It was therefore error to dismiss the buyer’s breach of contract action on Statute of Frauds grounds, and deny it any opportunity to prove that the alleged agreement had indeed been made.
For purposes of this dismissal motion, we accept the facts as stated by plaintiff buyer (Bazak International). On April 22, 1987 Karen Fedorko, marketing director of defendant seller (Mast Industries), met with Tuvia Feldman, plaintiff’s president, at Feldman’s office. Fedorko offered to sell Feldman certain textiles that Mast was closing out, and the two negotiated all the terms of an oral agreement except price. At a meeting the following day, Fedorko and Feldman agreed on a price of $103,330. Fedorko told Feldman that Bazak would receive written invoices for the goods the next day and that the textiles would be delivered shortly. When no invoices arrived, Feldman contacted Fedorko, who assured him that everything was in order and that the invoices were on the way. However, on April 30, 1987, Fedorko had Feldman come to the New York City offices of Mast’s parent company where, following Fedorko’s instructions, Feldman sent five purchase orders by telecopier to Mast’s Massachusetts office. That same day Feldman received written confirmation of Mast’s receipt of the orders. Mast made no objection to the terms set forth in the telecopied purchase orders, but never delivered the textiles despite Bazak’s demands.
Bazak then filed a complaint alleging breach of contract and fraud, which Mast moved to dismiss for failure to state a *117 cause of action, based upon the lack of documentary evidence (CPLR 3211 [a] [7]). Mast contended that the only writings alleged in the complaint — the purchase orders sent by Bazak to Mast, and Mast’s confirmation of receipt of the purchase orders — were insufficient under UCC 2-201 to satisfy the Statute of Frauds. In addition, Mast argued that the complaint did not make out a cause of action for fraud, but merely duplicated the contract allegations.
Supreme Court denied the motion to dismiss, but the Appellate Division reversed, holding that the breach of contract claim was barred by the Statute of Frauds, and that the fraud claim merely disguised a flawed breach of contract claim. The focal issue before us on Bazak’s appeal from that order is whether the disputed documents qualified as confirmatory writings within the "merchant’s exception” to the Statute of Frauds (UCC 2-201 [2]). We conclude that they did, and therefore reverse the Appellate Division order.
At the heart of the dispute are two issues involving the telecopied purchase orders. First, the parties disagree as to the standard for determining whether the purchase orders are confirmatory documents: Mast asserts that there is a presumption against application of UCC 2-201 (2) — if the memorandum on its face is such that a reasonable merchant could reasonably conclude that it was not a confirmation, then the claim is barred as a matter of law by the Statute of Frauds. Bazak, on the other hand, argues for a less restrictive standard — that is, a requirement only that the writings afford a belief that the alleged oral contract rests on a real transaction, a requirement Bazak contends that it has met. Second, the parties disagree as to the application of the governing standard to this complaint. Bazak contends that the purchase orders were sent in confirmation of the agreement already reached, and that there is sufficient support for that interpretation in the documents themselves; Mast argues that on their face, the purchase orders are no more than offers to enter into an agreement, and thus inadequate to satisfy the Statute of Frauds.
As to both issues, we are essentially in agreement with Bazak, and therefore reverse the order dismissing its complaint.
Before turning to the two substantive questions, there is a preliminary matter of what evidence should be considered in answering them. Although a court ordinarily might take *118 plaintiffs affidavits into account on a dismissal motion (see, e.g., Rovello v Orofino Realty Co., 40 NY2d 633, 635-636), different considerations apply where the basis for the dismissal motion is a Statute of Frauds defense. Parol evidence, even in affidavit form, is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute of Frauds. Consideration of parol evidence in assessing the adequacy of a writing for Statute of Frauds purposes would otherwise undermine the very reason for a Statute of Frauds in the first instance. That issue must be determined from the documents themselves, as a matter of law (see, Scheck v Francis, 26 NY2d 466, 472). Accordingly, the trial court erred in ruling that the Statute of Frauds issue should be determined as a matter of fact at trial, and to the extent that plaintiff’s arguments are based on parol evidence set forth in Bazak’s affidavits, we disregard them.
As a further threshold matter, it bears note that this dismissal motion does not resolve the parties’ underlying dispute. Assuming that the writings are sufficient on their face to surmount the Statute of Frauds defense, plaintiff still has the burden of proving the alleged agreement for the sale of the textiles (2 Hawkland, Uniform Commercial Code Series § 2-201:05, at 26; 1 White & Summers, Uniform Commercial Code § 2-3, at 78 [3d ed-Practitioner’s]). The present motion settles only the question whether the action can go forward at all; if successful now, plaintiff has yet to establish the allegations of its complaint in order for there to be any recovery against defendant.
Description of the Writings
A total of five printed purchase order forms, all of them on Bazak’s letterhead, were telecopied by Feldman to Mast from the offices of Mast’s parent company. The first four are individual orders for various quantities of different types of fabric, while the fifth summarizes the orders and states the total price. All are dated April 23, 1987 — the date of the alleged oral contract. On each form, are the handwritten words "As prisented [sic] by Karen Fedorko.” At the bottom of each form are several lines of small type reading: "All claims must be made within 5 days after receipt of goods. No allowances or returns after goods are cut. This is only an offer and not a contract unless accepted in writing by the seller, and subject to prior sale.” Each form concludes with two signature lines, *119 one for "bazak international corp.” and one for "customers acceptance.” Each form is signed by Bazak, but the space for "customers acceptance” remains blank.
An interoffice memorandum confirms that the purchase orders were telecopied to Mast’s Massachusetts office from the premises of Mast’s parent company on April 30, 1987.
The Writings as Confirmations of a Contract
The Statute of Frauds remains a vital part of the law of this State. A contract for the sale of goods for the price of $500 or more is not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.” (UCC 2-201 [1].) That section further provides that the only indispensable term in such a writing is quantity.
Undisputedly, the alleged oral contract in this case was for the sale of more than $500 worth of goods, and the only writings were not signed by Mast, against whom enforcement is sought. Bazak claims, however, that the orders fall under the merchant’s exception to the signature requirement contained in UCC 2-201 (2): "Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.” Bazak contends that the purchase orders are writings in confirmation of the oral agreement reached between Fedorko and Feldman, and that having failed to object to their contents Mast cannot now assert the Statute of Frauds defense.
At the outset, we are called upon to define the standard to be applied in determining whether a document can be construed as a confirmatory writing under UCC 2-201 (2): are explicit words of confirmation necessary? Should there be a presumption against application of the section? Relying on a New Jersey case, Trilco Term. v Prebilt Corp. (167 NJ Super 449, 400 A2d 1237, affd without opn 174 NJ Super 24, 415 A2d 356), and a subsequent Federal case applying Trilco, Norminjil Sportswear Corp. v T G & Y Stores Co. (644 F Supp 1 [SD NY]), Mast argues that confirmatory language is necessary, and that an exacting standard should be imposed.
*120 The cases cited by Mast do stand for the proposition that a writing offered as confirmatory in satisfaction of UCC 2-201 (2) is insufficient unless it explicitly alerts the recipient to the fact that it is intended to confirm a previous agreement. In Trilco (supra), the lower court stated its belief that as a policy matter, a more stringent test was appropriate under UCC 2-201 (2) than that applied under UCC 2-201 (1) to determine if a writing was "sufficient to indicate that a contract for sale has been made”, because under the merchant’s exception, a party could be bound by a writing it had not signed. The Federal District Court in Norminjil (supra) found this reasoning persuasive in what it perceived to be the absence of any New York case law on the point.
We disagree. Cases dealing with the sufficiency of a confirmatory writing between merchants are hardly legion, but this is not the first time any New York court has interpreted the confirmatory writing requirement. In B & R Textile Corp. v Domino Textiles (77 AD2d 539), the Appellate Division found that an invoice specifying the parties to the sale, the goods, prices and quantities involved, and the terms of payment constituted a writing in confirmation of an oral contract. Moreover, although the Appellate Division did not articulate the standard it had applied in reaching that result, there was no mention of any express language of confirmation in the invoice, suggesting that a more liberal test was employed.
But even writing on a clean slate, we reject the exacting standard proposed by Trilco and Norminjil as inconsistent with the letter and spirit of the relevant UCC sales provisions.
UCC 2-201 (1) requires that the writing be "sufficient to indicate” a contract, while UCC 2-201 (2) calls for a writing "in confirmation of the contract.” We see no reason for importing a more stringent requirement of explicitness to the latter section, and holding merchants engaged in business dealings to a higher standard of precision in their word choices. The official comment describes UCC 2-201 (1) as simply requiring "that the writing afford a basis for believing that the offered oral evidence rests on a real transaction.” As Karl Llewellyn, a principal drafter of UCC 2-201, explained to the New York Law Revision Commission: "What the section does * * * is to require some objective guaranty, other than word of mouth, that there really has been some deal.” (1954 Report of NY Law Rev Commn, at 119.) We hold that the same standard applies under UCC 2-201 (1) and 2-201 (2), *121 noting that this conclusion accords with the majority of courts and commentators that have considered the issue (see, e.g., Rubin & Sons v Consolidated Pipe Co., 396 Pa 506, 153 A2d 472, 476; Azevedo v Minister, 86 Nev 576, 471 P2d 661, 666; M. K. Metals v Container Recovery Corp., 645 F2d 583, 591 [8th Cir]; Dura-Wood Treating Co. v Century Forest Indus., 675 F2d 745, 749 [5th Cir]; Perdue Farms v Motts, Inc., 459 F Supp 7, 15-16 [ND Miss]; 2 Anderson, Uniform Commercial Code § 2-201:133, at 79 [3d ed]; 6C Bender’s UCC Service, Willier & Hart, UCC Reporter-Digest § 2-201, at 2-182; 1 White & Summers, op. cit., § 2-5, at 87-88).
Special merchant rules are sprinkled throughout article 2 of the Uniform Commercial Code, distinguishing the obligations of business people from others (see, UCC 2-103 [1] [b]; 2-205, 2-207 [2]; 2-209 [2]; 2-312 [3]; 2-314 [1]; 2-327 [1] [c]; 2-402 [2]; 2-403 [2]; 2-509 [3]; 2-603 [1]; 2-605 [1] [b]; and 2-609 [2]). Among the suggested motivations was to state clear, sensible rules better adjusted to the reality of what commercial transactions were (or should be), thereby promoting predictable, dependable, decent business practices (see, Hillinger, The Article 2 Merchant Rules: Karl Llewellyn’s Attempt to Achieve The Good, The True, The Beautiful in Commercial Law, 73 Geo LJ 1141 [1985]). Section 2-201 (2) recognized the common practice among merchants, particularly small businesses, to enter into oral sales agreements later confirmed in writing by one of the parties. Absent such a provision, only the party receiving the confirmatory writing could invoke the Statute of Frauds, giving that party the option of enforcing the contract or not, depending on how advantageous the transaction proved to be. UCC 2-201 (2) was intended to address that inequity; it encourages the sending of confirmatory writings by removing the unfairness to the sender. (See, 1954 Report of NY Law Rev Commn, at 115.)
In imposing a requirement that the writing explicitly state that it is sent in confirmation, the understandable concern of the New Jersey court in Trilco was that the effect of UCC 2-201 (2) was "to bind a merchant to a writing that he did not sign” (167 NJ Super, at 455, 400 A2d, at 1240, supra), and thus to create a new potential unfairness: a merchant might unilaterally create a binding contract simply by dispatching unsolicited purchase orders, thus unfairly disadvantaging the recipient. Consequently, the court perceived it was necessary to require that the writing contain explicit language of confirmation or reference to the prior agreement, so the recipient *122 could know that the sender was asserting the existence of a contract, and hence had a "meaningful opportunity” to exercise the right of objection found in UCC 2-201 (2) (id., at 454, 400 A2d, at 1240). This argument is not without merit. However, in our view it overlooks other protections provided by UCC 2-201.
A confirmatory writing does not satisfy the requirements of UCC 2-201 (2) unless it is "sufficient against the sender.” This alone provides some protection against abuse, for the sending merchant itself runs the risk of being held to a contract. Moreover, while we hold that explicit words of confirmation are not required, the writing still must satisfy the test articulated in UCC 2-201 (1) that it be "sufficient to indicate that a contract for sale has been made”. A purchase order, standing alone, is unlikely to meet this test. On the other hand, if the writing contains additional evidence that it is based upon a prior agreement, then as a policy matter it is not unfair to require the recipient to make written objection where there is an intent to disavow it. True, a rule requiring explicit confirmatory language or an express reference to the prior agreement could be applied mechanically and would afford the broadest possible protection to recipients of unsolicited orders. But that rigidity and breadth also could work unnecessary injustice and be unresponsive to the realities of business practice, which was a likely motivation for the merchant’s exception in the first instance. Indeed, such a rule would reintroduce the very unfairness addressed by the reform, for the sending merchant still would be bound by the writing while the recipient could ignore it or enforce it at will (see, Comment, The Merchant’s Exception to the Uniform Commercial Code’s Statute of Frauds, 32 Villanova L Rev 133, 165-173 [1987]).
Finally, as additional protection against abuse and inequity, we note that the consequence of a failure to give timely written notice of objection to a confirmatory writing is only to remove the bar of the Statute of Frauds. The burden of proving that a contract was indeed made remains with the plaintiff, as does the burden of proving the terms of the contract. By the same token, the defendant remains free to urge that no contract was made, or that it differed from the one claimed by plaintiff (UCC 2-201, official comment 3). Thus, UCC 2-201 (2) neither binds the receiving merchant to an agreement it has not made nor delivers an undeserved tri *123 umph to the sending merchant. It does no more than permit the sender to proceed with an attempt to prove its allegations.
We therefore conclude that, in determining whether writings are confirmatory documents within UCC 2-201 (2), neither explicit words of confirmation nor express references to the prior agreement are required, and the writings are sufficient so long as they afford a basis for believing that they reflect a real transaction between the parties.
It remains for us to apply this standard to the facts and determine whether the documents in issue satisfy the requirements of UCC 2-201 (2).
Of the various requirements of UCC 2-201 (2), four are not in controversy. There is no dispute that both parties are merchants, that the writing was sent within a reasonable time after the alleged agreement, that it was received by someone with reason to know of its contents, and that no written objection was made. If the writings can be construed as confirming the alleged oral agreement, they are sufficient under UCC 2-201 (1) against Bazak — the sender — since Bazak signed them. Thus, the open question is whether, applying the governing standard, the documents here were sufficient to indicate the existence of a prior agreement.
Cases considering whether writings containing the words "order” or "purchase order” could satisfy the "confirmatory” requirement of UCC 2-201 (2) fall into two categories. In some, the writings on their face contemplated only a future agreement, and they were held insufficient to overcome the Statute of Frauds defense (see, e.g., Arcuri v Weiss, 198 Pa Super 506, 184 A2d 24); in others, there was language clearly indicating that a contract had already been made, and the writings were deemed sufficient (see, e.g., Dura-Wood Treating Co. v Century Forest Indus., 675 F2d 745, supra; Perdue Farms v Motts, Inc., 459 F Supp 7, supra). The writings here do not fit neatly into either group. However, taken as a whole, there is sufficient evidence that the writings rest on a real transaction, and therefore satisfy the Statute of Frauds.
We first address Mast’s contention — apparently decisive in the Appellate Division — that the small print at the foot of the forms to the effect that they are "only an offer and not A CONTRACT UNLESS ACCEPTED IN WRITING BY THE SELLER” must be given literal effect and precludes the possibility that the writings were confirmatory of an agreement. While an express disclaimer generally would suffice to disqualify a memoran *124 dum as confirmatory of an oral agreement (see, 1 White & Summers, op. cit., §2-4, at 85), it is plain from the face of these documents that the printed matter was entirely irrelevant to the dealings between these parties. The forms themselves bespeak their purpose: to record a sale by Bazak as seller, not a purchase by Bazak as buyer. The language regarding claims, allowances and returns are clearly all referable to a transaction in which Bazak was the seller, as is the signature line for Bazak. Read literally, these forms would not even have allowed for Mast’s signature; the line for "customers acceptance” is obviously inapplicable — Bazak, not Mast, was the customer. In short, though Mast is free to argue at trial that different inferences should be drawn, the forms indicate that Bazak simply used its seller’s documents to record its confirmation of the alleged contract, and that the small print at the bottom of the page was no part of that communication.
The handwritten notations on the purchase order forms provide a basis for believing that the documents were in furtherance of a previous agreement. The terms set forth are highly specific; precise quantities, descriptions, prices per unit and payment terms are stated. The documents refer to an earlier presentation by defendant’s agent Karen Fedorko. The date April 23, 1987 is written on the forms and the date April 30 on the transmission, indicating reference to a transaction that took place a week before they were sent. Finally, Mast itself relayed Bazak’s forms. The telecopier transmittal sheet shows that the forms were sent to Mast by defendant’s own parent company in New York, using its facilities — obviously suggesting that the forms were not merely unsolicited purchase orders from Bazak, but that their content reflected an agreement that had been reached between the parties.
While no one of these factors would be sufficient under UCC 2-201 (2), considered together they adequately indicate confirmation of a preexisting agreement so as to permit Bazak to go forward and prove its allegations.
Finally on this issue, addressing the dissent, it is apparent that a philosophical difference divides the court. The plain implication of the dissent is that express confirmatory language is needed because "ambiguous” confirmatory writings unfairly burden receiving merchants. The majority, by contrast, perceives that the Code intended to place such a burden on the receiving merchant because there is less unfairness in *125 requiring it to disavow than in denying the sending merchant who has failed to use any magic words an opportunity to prove the existence of a contract. A merchant bent on fraud, of course, can easily send documents containing express confirmation of a nonexistent oral contract, so it is difficult to see how our reading of the statute "weakens” its protection against fraud (dissenting opn, at 131). The protection consists of requiring a writing that provides a basis for belief that it rests on a real transaction — no more, no less. If the writing is sufficient to indicate the existence of a contract, it is also sufficient at the pleading stage to support an inference that the receiving merchant knew full well what it was.
Plaintiffs Fraud Cause of Action
Having thus resolved the motion to dismiss the breach of contract claim, little need be added regarding plaintiffs fraud claim. Assuming every fact alleged by plaintiff to be true, and liberally construing the pleading in plaintiffs favor, we conclude both that there was sufficient specificity to satisfy CPLR 3016 and that the fraud alleged is not simply a duplication of the breach of contract claim, as defendant urges. Viewed from the perspective of a dismissal motion, the fraud count may be read to assert that defendant’s persistent promises to send invoices induced plaintiff to undertake an obligation to a third person for which it now stands responsible. In a fraud case, where it has long been recognized that " 'the circumstances constituting a fraud * * * are peculiarly within the knowledge of the party against whom the (fraud) is being asserted’ ” (CPC Intl. v McKesson Corp., 70 NY2d 268, 285, citing Jered Constr. Corp. v New York City Tr. Auth., 22 NY2d 187, 194), that is plainly sufficient to survive a motion to dismiss.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion to dismiss the complaint denied.