**BAZAK INTERNATIONAL CORP., Plaintiff,**

v.

**TARRANT APPAREL GROUP, Defendant.**

No. 04 Civ. 3653VM.

United States District Court, S.D. New York.

July 18, 2005.

Matthew C. Gruskin, Shiboleth, Yisraeli, Roberts & Zisman, LLP, New York City, for Plaintiff.

John E. Linville, Ronald Gustav Blum, Manatt, Phelps & Phillips, LLP, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Bazak International Corp. ("Bazak"), a textile merchandising company, brought this action in New York State Supreme Court against defendant Tarrant Apparel Group ("Tarrant"), a corporation also in the textile merchandising business. Tarrant removed the case to this Court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332, and the Court subsequently granted Tarrant's motion to dismiss Bazak's claim of unjust enrichment. *See Bazak International Corp. v. Tarrant Apparel Group,* 347 F.Supp.2d 1 (S.D.N.Y.2004). Tarrant now moves for summary judgment on Bazak's breach of contract claim. The Court finds outstanding issues of material fact that preclude summary judgment. Accordingly, Tarrant's motion is denied.

## I. BACKGROUND [1]

On September 15, 2003, Tuvia Feldman ("Feldman"), the president of Bazak, met with Gerrard Guez ("Guez"), Tarrant's Chief Executive Officer, in Tarrant's New York office to discuss Bazak's proposed purchase of certain jeans from Tarrant. During this meeting, Guez indicated that Tarrant had 1,600,000 pairs of jeans available to sell to Bazak. The parties allegedly agreed that, subject to Bazak's receipt of a written inventory and visual inspection of the items in Tarrant's warehouses in Los Angeles, Tarrant would sell Bazak the jeans at a price of between $3.00 and $3.50 per item, provided that Bazak would buy the entire inventory and take possession of the items by the end of the year.

On September 18, 2003, an employee of Tarrant sent Feldman an inventory list that detailed the merchandise Tarrant apparently planned to sell to Bazak. Following receipt of the inventory, Feldman and Avi Jacobi ("Jacobi"), an agent of R & I Trading of New York ("R & I"),[2] flew to Los Angeles on September 29, 2003 to inspect the merchandise. Feldman and Jacobi were taken to Tarrant's office to meet with Guez, who indicated that they were to deal directly with Brian Buchan ("Buchan") on the transaction.

When Feldman and Jacobi inspected the merchandise at Tarrant's warehouse, they learned that approximately 700,000 of the pairs of jeans that Bazak had expected to purchase were not among the inventory and had been sold to a third party. This change in inventory altered the price Bazak was willing to pay per item. Consequently, Feldman and Jacobi spent two days spot-checking the merchandise to de-

---

1. The factual summary derives from the representations of the parties in their submissions. The Court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir.2004) (internal quotation marks omitted).

2. R & I originally planned to purchase merchandise from Tarrant jointly with Bazak. Instead, however, it entered into a separate agreement with Bazak whereby Bazak would re-sell Tarrant's goods to R & I.

termine whether an agreement could still be reached. During their inspection, Feldman and Jacobi discovered that the remaining inventory varied from the description given by Tarrant during its initial conversation with Bazak. Nonetheless, Feldman offered to buy the entire inventory, consisting of 912,714 items, at $2.40 per item. Guez allegedly accepted the offer orally and told Buchan to send samples of the inventory to Bazak, along with an invoice.

According to Bazak, Feldman sent Buchan a signed letter ("Exhibit 3"), dated October 3, 2003, which purported to confirm the agreement between Guez and Feldman and detailed an inventory of 912,-714 items at $2.40 per item. Tarrant contests the authenticity of Exhibit 3 and alleges it was never received by Tarrant. The disputed Exhibit 3 addressed to Buchan reads:

> As per our agreement with Mr. Gerrard Guez, we would like to inform you that Bazak International Corp. has purchased the total inventory of 912,714 pcs of assorted jeans and twills as per inventory submitted and calculated by yourself and your assistant on September 30, 2003. The total inventory purchased is 912,714 pcs at $2.40 per pcs totaling approx $2,190,513.60. Please send us a proforma invoice immediately in order for us to proceed in preparing our Letter of Credit. Please ship all the samples per your conversation with Mr. Jacobi to Bazak International Corp. at the address listed above.

The letter contains both a typed and handwritten signature of Feldman. (Affidavit

of John Linville, dated February 4, 2005 ("Linville Aff."), Ex. A at 1, attached as Part 6 of Defendant's Motion for Summary Judgment, dated March 4, 2005 ("Def.Mot.").)

Bazak has also produced another letter ("October 3 email"), also dated October 3, 2003, addressed to Buchan and sent via e-mail by Gali Neufeld ("Neufeld") of R & I on behalf of Feldman.[3] The e-mail's subject line reads "Total Inventory Purchased," and the electronically attached letter sent on Bazak letterhead states:

> As per our agreement with Mr. Gerard Guez, we would like to inform you that Bazak International has bought the total inventory of 747,096 pcs per your Sep 30, 2003 inventory report less the following: Kohls men 8,000 pcs; Structure men 22,000 pcs; Express junior 10,000 pcs; Express missy 19,200 pcs. The total inventory purchased is 687,896 pcs. Please send us a proforma invoice in order for us to proceed in preparing our L/C. Please ship all samples per your conversation with Mr. Jacobi to Bazak International at the Address listed above.

The letter closes with Feldman's typed signature. (Linville Aff., Ex. A at 2.) Buchan claims to recall neither seeing the e-mail message nor opening its attachment. (Affidavit of Brian Buchan, dated February 2, 2005 ("Buchan Aff."), ¶ 9, attached as Part 4 of Def. Mot.) Bazak alleges that it did not receive a reply to either letter.

On October 6, 2003, Tarrant sent Bazak eleven cartons of sample inventory with accompanying documentation but no in-

---

**3.** In an opinion granting Tarrant's motion to dismiss Bazak's claim of unjust enrichment, the Court characterized the October 3 e-mail as "unsigned." However, the legal adequacy of the e-mail was not the subject of that opinion, and the characterization of the e-mail as "unsigned" was not in reference to the legal definition of "signature" under the UCC. Instead, it was employed solely as a descriptive term making use of its commonplace meaning of lacking a handwritten signature. As explained in Part III.B, the October e-mail satisfies the UCC's requirement of a signature.

voice. Feldman, on behalf of Bazak, then requested an invoice from Tarrant, but Bazak claims that Tarrant never sent an invoice. On October 7, 2003, Bazak was provided with a revised inventory report that deviated from the terms set down in both Exhibit 3 and the October 3 e-mail. On October 13, 2003, Guez forwarded Bazak an internal Tarrant e-mail ("GMAC e-mail") that requested the identity of the closeout buyer for credit rating purposes, though Tarrant maintains that it was not written by a Tarrant employee. Shortly thereafter, Bazak was informed that Tarrant would instead sell its inventory to another buyer, David's Place, at a higher price.

The Complaint filed by Bazak in the instant action claimed that Tarrant and Bazak had a contract for the purchase of 912,712 specific inventory items at a price of $2.40 per item and that Tarrant breached the agreement when it sold the merchandise to David's Place. Bazak further alleged that Tarrant was unjustly enriched by this sale. Following removal of the action to this Court and Tarrant's motion to dismiss for failure to state a claim, Bazak amended its complaint with respect to its cause of action for breach of contract, attaching the Exhibit 3 letter. (*See* Am. Compl., dated June 11, 2004, ¶¶ 10, 17.) Bazak concurrently responded to Tarrant's motion to dismiss. In a letter to the Court, Tarrant disputed the authenticity of Exhibit 3. (*See* Letter from John Linville to the Court, dated June 25, 2004.) Tarrant subsequently filed a reply, voluntarily withdrawing its motion to dismiss as to the breach of contract claim until the authenticity of Exhibit 3 could be determined. The Court later granted Tarrant's motion to dismiss Bazak's claim of unjust enrichment. The Court also authorized discovery with regard to the parties' dispute concerning Exhibit 3, following the completion of which Tarrant moved for summary judgment. The Court now considers the merits of Tarrant's motion for summary judgment on Bazak's breach of contract claim.

## II. *LEGAL STANDARD*

To prevail on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), the moving party must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether genuine issues of material fact exist, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

"[T]he parties rely exclusively on New York substantive law, and 'where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.'" *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 743 (2d Cir.1999) (quoting *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997)). Although Tarrant makes mention of the California Uniform Commercial Code, it is only to note that it is identical to that of New York. (*See* Memorandum in Support of Defendant's Motion for Summary Judgment, dated February 4, 2005 ("Def.Mem."), at 2, 11.) Therefore, the Court has considered only New York law in deciding this motion.

A breach of contract claim under New York law "requires proof of (1) a contract;

(2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994); *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.1998). Tarrant's motion for summary judgment fails since there remain genuine issues of material fact as to the existence of a contract between the parties.

Tarrant presents two grounds for its summary judgment motion. Neither is sufficiently supported by the record. First, Tarrant contends that the alleged contract violates the Statute of Frauds. Specifically, Tarrant argues both that the October 3 e-mail does not fulfill the "merchant's exception" requirements and that the Exhibit 3 letter cannot be admitted as evidence of an alternative writing. (Def. Mem. at 11.) The Court disagrees, and finds that the October 3 e-mail satisfies the New York Uniform Commercial Code ("UCC") statutory requirements that present questions of law. The remaining issues raise questions of fact as to which Bazak has produced sufficient evidence on the basis of which a reasonable jury could find in its favor.

Second, Tarrant maintains that the contract alleged by Bazak is unenforceable because it lacks essential prerequisites of a contract, such as possibility of performance and mutual assent. (Def. Mem. at 18.) However, similar to Tarrant's arguments pertaining to the Statute of Frauds, the force of these claims depends on the resolution of factual questions. Consequently, the Court cannot properly grant Tarrant's motion for summary judgment.

## III. *DISCUSSION*

### A. *THE ALLEGED CONTRACT DOES NOT VIOLATE THE STATUTE OF FRAUDS*

Tarrant has failed to demonstrate the absence of any genuine issue of material fact concerning the applicability of the Statute of Frauds. The UCC sale of goods provision states:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

N.Y. U.C.C. Law § 2–201(1). While neither party contends that a written contract was formed, Bazak asserts that the parties' agreement falls within the UCC's "merchant's exception." This exception provides:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

N.Y. U.C.C. Law § 2–201(2).

In *Bazak International Corp. v. Mast Industries, Inc.,* the New York Court of Appeals directly addressed the issue of the adequacy of a writing necessary to enable an alleged oral contract to withstand the Statute of Frauds. 73 N.Y.2d 113, 538 N.Y.S.2d 503, 535 N.E.2d 633 (1989) (*"Mast Industries"*). In *Mast Industries,* the parties entered into an alleged agree-

ment stipulating that Bazak would buy certain re-sale clothing items from Mast. The evidence put forward by Bazak of this agreement included five purchase orders signed by Bazak, telecopied to Mast, and retained by Mast without objection. The bottom of each form read, "This is only an offer and not a contract unless accepted in writing by the seller, and subject to prior sale." *Id.*, 535 N.E.2d at 635. Mast neither signed nor returned the forms. Despite the language of the purchase orders, the court held that the documents were sufficient for the purposes of the "merchant's exception" because they "afford a basis for believing that they reflect a real transaction between the parties." *Id.* at 638. Accordingly, the defendant's motion to dismiss was denied. It is against this backdrop that the Court determines the sufficiency of the documentation put forth by Bazak in the case at bar.

### 1. *E-mails Can Satisfy the "Writing" Requirement*

Tarrant contends that Bazak's October 3 e-mail cannot satisfy UCC Section 2–201(2)'s "writing in confirmation" requirement because the statute does not specifically mention e-mail as a recognized form of writing. (Defendant's Reply Memorandum in Support of Motion for Summary Judgment, dated March 4, 2005 ("Def.Reply"), at 7.) However, the October 3 e-mail does, as a matter of law, satisfy this element. *See Mast Industries,* 538 N.Y.S.2d 503, 535 N.E.2d at 635. The UCC states that " '[w]ritten' or 'writing' includes printing, typewriting or any other intentional reduction to tangible form." N.Y. U.C.C. Law § 1–201(46). Neither the Second Circuit nor the Courts of the Southern District of New York have determined conclusively whether messages sent by e-mail qualify as "writings" under this definition. Instead of stating a generally applicable rule, the Second Circuit and some courts in this District have evaluated the adequacy of e-mails on a case-by-case basis, distinguishing on account of either the absence of particular terms, or inferences from the message's language. This substantive approach implies that a writing's electronic form, alone, does not prevent it from fulfilling UCC Section 2–201(2). *See Sel–Leb Mktg., Inc. v. Dial Corp.,* No. 01 Civ. 9250, 2002 WL 1974056 (S.D.N.Y. Aug.27, 2002); *S & S Textiles Int'l v. Steve Weave, Inc.,* No. 00 Civ. 8391, 2002 WL 1837999 (S.D.N.Y. Aug.12, 2002); *see also* 10 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 29:23 (4th ed. & Supp.2004) (hereinafter *Williston on Contracts*); John E. Theuman, *Satisfaction of Statute of Frauds by E–Mail,* 110 A.L.R.5th 277, 2003 WL 21697202 (2003).

Although e-mails are intangible messages during their transmission, this fact alone does not prove fatal to their qualifying as writings under the UCC. Aside from posted mail, the forms of communication regularly recognized by the courts as fulfilling the UCC "writing" requirement, such as fax, telex and telegraph, are all intangible forms of communication during portions of their transmission. Just as messages sent using these accepted methods can be rendered tangible, thereby falling within the UCC definition, so too can e-mails. *See* Deborah L. Wikerson, *Electronic Commerce Under the U.C.C. Section 2–201 Statute of Frauds: Are Electronic Messages Enforceable?,* 41 U. Kan. L.Rev. 403, 412 (1992). Additionally, because "[u]nder any computer storage method, the computer system 'remembers' the message even after being turned off," whether or not the e-mail is eventually printed on paper or saved on the server, it remains an objectively observable and tangible record that such a confirmation exists. *Id.* at 412. Consequently, there

appears to be little distinction between e-mails and other forms of communication regularly recognized under the Statute as adequate "writings."

■ Moreover, the policy motivation behind the UCC and its adoption in New York, as well as the Second Circuit's generally liberal view toward Section 2–201(2)'s construction, suggest that the electronic form of an e-mail "writing" does not as a rule preclude enforcement of the underlying agreement. *See Apex Oil Co. v. Vanguard Oil & Service Co.*, 760 F.2d 417, 423 (2d Cir.1985). The Statute of Frauds aims to guard against fraud and perjury by requiring some proof of a contract, and the UCC's sale of goods provision is designed to " 'require some objective guaranty, other than word of mouth, that there really has been some deal.' " *Mast Industries*, 538 N.Y.S.2d 503, 535 N.E.2d at 636 (quoting 1954 *Report of N.Y. Law Rev. Commn.* at 119.) An e-mail suffices as much as a letter, a telegram or a fax to provide such objective indication of an existing agreement.

At the same time, the UCC drafters, in attempting to promote predictable and dependable business practices, endeavored to set forth clear, practical rules in line with the real pace and practices of the commercial world. *See id.*, 538 N.Y.S.2d 503, 535 N.E.2d at 637. In this spirit, the "merchant's exception" permits enforceable contracts to emerge from the common commercial practice of entering into oral agreements for the sale of goods that are only later confirmed in writing. *Id.* Few would dispute that e-mail is currently one of the most common forms of communication for lay-persons and merchants alike. Thus, permitting otherwise sufficiently precise e-mails to serve as "writings" furthers the manifest intentions of the UCC's drafters. Although addressed more fully below in Part II.A.4, it merits note that

whether e-mail is an appropriate form of communication for any particular set of contracting parties is a separate and subsequent question, that often presents factual questions concerning trade usage.

Arguments in favor of a more strict reading of the UCC requirements—arguments clearly rejected by the New York Court of Appeals in *Mast Industries*—are no more compelling in a case concerning e-mail confirmation than those based on more traditional forms of correspondence. While the possibility that a party could create a "binding contract simply by dispatching unsolicited [writings], thus unfairly disadvantaging the recipient" exists, the risk run is no greater with e-mails than with other forms of transmission. *Id.*, 538 N.Y.S.2d 503, 535 N.E.2d at 637. Both hand-written and typed messages are capable of fabrication. In fact, in holding that a telex can satisfy UCC Section 2–201, the Second Circuit in *Apex Oil* explained:

> [W]e recognize that we are permitting a substantial transaction to be consummated on fragmentary conversation and documentation. However, it is the practice in many fields to transact business quickly and with a minimum of documentation.... Parties doing business with each other in such circumstances take the risk that their conflicting versions of conversations will be resolved to their disfavor by a fact-finder whose findings, even if incorrect, are immune from appellate revision.

*Apex Oil,* 760 F.2d at 423.

The October 3 e-mail put forward by Bazak is distinguishable from messages at issue in other cases that were held insufficient to satisfy the Statute of Frauds. Two recent cases in this District provide apt comparisons. In *S & S Textiles International v. Steve Weave, Inc.*, the court granted the plaintiff's motion for summary judgment, holding that the modification of

the contract alleged by the defendant was unenforceable under the New York Statute of Frauds. No. 00 Civ. 8391, 2002 WL 1837999 (S.D.N.Y. Aug.12, 2002). The court rejected the two e-mails that the defendant offered as evidence of this alleged modification. As to the first e-mail, the court held that the statement "agree/confirm concessions as per tel talk with you" was too ambiguous and the inferences drawn from the mentioning of the term "concessions" too tenuous to create a question of fact about the modification. *Id.* at *5. The defendant also failed to demonstrate a connection between the bills mentioned in the e-mail and the shipments at issue in the case. Regarding the second e-mail, the court found that it simply referred to several unrelated transactions and therefore was inadequate to serve as a written contract modification. Although the court held that the e-mails were "not sufficient to constitute a confirmation of an agreement that would satisfy the Statute of Frauds," the reference citation implies that they were insufficient due to these substantive flaws as opposed to a bright line rejection by the court of the e-mails as writings simply because of their format as e-mails. *Id.* at *6 n. 19.

In comparison, the October 3 e-mail at issue here in substance is sufficient to meet the requirements of the Statute of Frauds, *see infra* Part II.A.2–5; *see also Mast Industries*, 538 N.Y.S.2d 503, 535 N.E.2d at 635; the only issue is whether its format as an e-mail precludes its consideration. Indeed, that the court in *S & S Textiles* did not rule the e-mails out of hand simply by reason of their status as e-mails supports this Court's admission of the October 3 e-mail as a confirmatory writing under the UCC.

Likewise, the case at bar is distinguishable from *Sel–Leb Marketing, Inc. v. Dial Corp.*, where the court granted defendant's motion to dismiss, finding the offered e-mail "writing" to be insufficient. No. 01 Civ. 9250, 2002 WL 1974056 (S.D.N.Y. Aug.27, 2002). In *Sel–Leb*, the parties disputed whether the alleged contract was one for the sale of goods or of intangibles. The court held that the agreement between the parties was a contract for sale of intangibles and applied the relevant portion of the UCC, Section 1–206(1). Although this provision requires the "writing" to be signed by the party to be charged, the e-mails offered by the plaintiff displayed no such signature. Moreover, none of these e-mails unambiguously referred to the alleged agreement and seemed instead to pertain to other subjects. Additionally, the e-mails failed to specify any terms of the agreement, including the subject of the contract and the price to be paid for the merchandise.

In contrast to the e-mails rejected in *Sel–Leb* under the UCC section applicable in that case, Section 1–206, the October 3 e-mail need only be sufficient against the sender, Bazak, under the "merchant's exception." *See* N.Y. U.C.C. Law § 2–201(2). As discussed below, the October 3 e-mail satisfies this requirement. Further, that e-mail deals exclusively with the parties' transaction, explicitly refers to a specific conversation between the parties and outlines in detail the merchandise at issue. In addition, while both the October 3 e-mail and those in *Sel–Leb* omit the price term, only UCC Section 1–206, which is inapplicable in the case at bar, requires such a term.[4]

Finally, as in *S & S Textiles*, the key point in *Sel–Leb* is that the court considered the e-mails as writings that might potentially satisfy the Statute of Frauds, and rejected them for their substantive

**4.** Compare UCC Section 1–206(1) ("at a defined or stated price") with Section 2–201(2).

failings. This Court similarly finds the October 3 e-mail to be a "writing," and separately determines its substantive adequacy.

The notable lack of discussion concerning the ability of e-mail to stand as a "writing" in both *S & S Textiles* and *Sel-Leb* may be explained in part by the adoption in 2000 of 15 U.S.C. Section 7001. The federal provision states:

> Notwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or affecting interstate or foreign commerce—(1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a). The widespread interest in permitting otherwise substantively sufficient e-mails to stand as "writings," as evidenced by Section 7001's adoption, supports this Court's finding to the same effect.

### 2. *The October 3 E-mail Satisfies the Signature Requirement*

While UCC Section 2–201(2) does not explicitly state that a signature is necessary for a writing to be "sufficient against the sender," language in *Mast Industries* hints that it may be so required. *Mast Industries*, 538 N.Y.S.2d 503, 535 N.E.2d at 638 ("If the writings can be construed as confirming an alleged oral agreement, they are sufficient under UCC 2–201(1) against Bazak—the sender—since Bazak signed them."). Even if this is the case, the October 3 e-mail fulfills this requirement as a matter of law.

"Signed" is meant to include "any authentication which identifies the party to be charged." N.Y. U.C.C. Law § 2–201 official comments. The official commentary to the statutory language elaborates:

> The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. . . . The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

N.Y. U.C.C. Law § 1–201 official cmt. 39.

■ Since Bazak's President's typed signature appears at the signatory line of the attached letter and the letter is typed on Bazak company letterhead, the writing is "sufficient against the sender." *See Mast Industries*, 538 N.Y.S.2d 503, 535 N.E.2d at 638.

### 3. *The October 3 E-mail Can Be Construed As "In Confirmation" Of An Earlier Agreement*

■ The October 3 e-mail also satisfies the UCC requirement of a writing "in confirmation" of an earlier agreement. To survive summary judgment, the writing need only be "sufficient to indicate that a contract for sale has been made." *Mast Industries*, 538 N.Y.S.2d 503, 535 N.E.2d at 637. It is not required to precisely set forth every material term of the agreement. *See Apex Oil*, 760 F.2d 417. The writing must simply "provide a basis for belief that it rests on a real transaction—no more, no less." *Mast Industries*, 538 N.Y.S.2d 503, 535 N.E.2d at 639. And while quantity is the only contractual term specifically required under the UCC, even

a writing incorrectly stating this term may be sufficient. N.Y. U.C.C. Law § 2–201(1).[5]

The October 3 e-mail satisfies this legal standard in that it provides a sufficient basis for belief that its message rests on a real contract. The e-mail contains the requisite quantity term, though the parties dispute whether the figure is misstated. (*See* Linville Aff., Ex. A at 2.) Additionally, while the message lacks a price quote, this omission is not fatal under Section 2–201.

### 4. *A Jury Could Find That the Writing was Received and That the Receiving Party Had Reason to Know of Its Contents*

■ Whether receipt of a confirmatory writing has occurred is a question of fact, inappropriately determined on summary judgment. *See Williston on Contracts* § 29:27. Though the UCC does not define "receipt" in the context of a confirmatory writing, it provides a definition of "receipt of notice." *Williston on Contracts* § 29:27. Section 1–201(26) states:

A person "receives" a notice or notification when: (a) it comes to his attention; or (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of the communications.

N.Y. U.C.C. Law § 1–201(26).

Further, the requirement of having "reason to know of its contents" is satisfied when "from all the facts and circumstances known to him at the time in question he has reason to know that it exists." N.Y. U.C.C. Law § 1–201(25)(c); *Williston on Contracts* § 29:27.

Disputes concerning both receipt and reason to know raise questions of fact.

Therefore, the Court must only determine whether Bazak has presented evidence sufficient to create a genuine issue of material fact as to these elements. *See* Fed. R.Civ.P. 56. The Court is persuaded that Bazak has put forth facts that demonstrate a genuine issue of material fact as to each. Neither party disputes that the October 3 e-mail appeared in Buchan's inbox and was thereby received in the technical sense. Nonetheless, Tarrant contends that Buchan has no recollection of opening the e-mail or its attachment and that the e-mail was therefore not constructively received. (Buchan Aff. ¶ 9.) However, this assertion more appropriately addresses the issue of Buchan's "reason to know" of the contents of the writing—reason to know to open the e-mail—than actual receipt of it. *See* Section 2–201(2). In spite of Tarrant's argument, the Court finds that the October 3 e-mail satisfies the UCC definition of receipt of notice set forth in UCC Section 1–201(26), as it sufficiently came "to [Buchan's] attention" and also was "duly delivered at the place of business through which the contract was made." N.Y. U.C.C. Law § 1–201(26)(a).

Nonetheless, whether e-mail is an appropriate and reasonably expected form of communication between the two particular parties before the court is a question of fact. Here, the issue's resolution requires a factual inquiry into trade usage and course of dealing. *See Williston on Contracts* § 34:19. Construing facts in the light most favorable to the non-movant, Bazak has demonstrated the existence of a genuine issue of material fact concerning this question. Neither party directly addresses whether e-mail is an appropriate method of communication in the re-sale trade generally or in Tarrant and Bazak's particular relationship. Yet later e-mail

---

**5.** But such a "contract is not enforceable under this paragraph beyond the quantity of goods shown in such a writing." N.Y. U.C.C. Law § 2–201(1).

correspondence from Tarrant to Bazak (the "GMAC e-mail") provides evidence in light of which a reasonable jury could find that the parties did accept e-mail as an appropriate form of communication. (Gruskin Affirmation, dated February 5, 2005, Ex. 13.)

Further, Bazak has put forth evidence that demonstrates a genuine issue of material fact as to whether Buchan had reason to know of the October 3 e-mail's contents "from all the facts and circumstances known to him at the time in question." N.Y. U.C.C. Law § 1–201(25)(c). In particular, Bazak has offered evidence demonstrating that Buchan may have had reason to know, at least generally, what the e-mail's subject and purpose would be. A jury certainly could find the October 3 e-mail's title, "Total Inventory Purchased," sufficiently specific to put Buchan on notice of its contents given his contemporary role in the transaction, despite his alleged ignorance of the sender. (*See* Linville Aff., Ex. A; Buchan Aff. ¶ 9.) Moreover, since Buchan's primary responsibility at Tarrant is to sell available merchandise, a jury could find it unlikely Buchan would think that an e-mail so titled was spam and did not require his personal attention. (Buchan Aff. ¶ 2.) Buchan had also met previously with a representative from R & I, the company-sender of the e-mail, although he states he did not recognize the sender. (Buchan Aff. ¶ 3.) Therefore, construing all facts in favor of Bazak, a genuine issue of material fact remains.

### 5. *A Jury Could Find That the Writing Was Retained Without Objection*

◼ Similarly, the dispute as to whether the October 3 e-mail was retained without objection is a question of fact. *See Williston on Contracts* § 29:27. In the case at bar, the parties' factual dispute as to what form of response constitutes objection requires consideration of trade usage. Bazak has provided sufficient evidence of re-sale merchant trade practices to buttress its contention that Tarrant's asserted objection was not of a recognized form. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated Feb. 25, 2005 ("Pl. Mem."), at 24.) Specifically, Bazak argues that Tarrant's alleged objection manifested by the terms of its October 7, 2003 inventory report is without force. The inventory report does not express unequivocal objection and in light of trade practice in the re-sale industry, where parties allow the quantities of goods to shift continuously, Bazak would not reasonably take the sending of that report as such absent this clear expression. (Affidavit of Tuvia Feldman, dated February 25, 2005 ("Feldman Aff."), ¶¶ 18, 25, 32; Affidavit of Abraham Jacobi, dated February 25, 2005 ("Jacobi Aff."), ¶¶ 15–19.) Thus, construing all facts in favor of Bazak, the Statute of Frauds does not, as a matter of law, preclude the Court from finding a contract to exist between Bazak and Tarrant.

### B. *THE OTHER REQUIREMENTS FOR A VALID CONTRACT ARE SUFFICIENTLY DEMONSTRATED*

◼ While the applicability of the Statute of Frauds defense is a threshold matter in many contract cases, survival on this matter does not eliminate the need to prove a contract. *Mast Industries,* 538 N.Y.S.2d 503, 535 N.E.2d at 635 (citing 2 Hawkland, *Uniform Commercial Code Series* § 2–201:05, at 26; James J. White & Robert S. Summers, *Uniform Commercial Code* § 2–3, at 78 (2d ed.1980)). Indeed, to recover damages, Bazak must still establish the essential elements of an underlying agreement. Thus, although failing to demonstrate the absence of all genu-

ine issues of material fact concerning the threshold issue of Statute of Frauds, Tarrant's motion for summary judgment may be appropriately granted if Bazak's claim fails to establish the existence of an underlying contract.

However, construing all facts in favor of Bazak, Tarrant's motion fails. The oral agreement alleged by Bazak to underlie the October 3 e-mail is an informal contract that requires a "bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Williston on Contracts* § 3:2. Tarrant has not demonstrated the absence of all genuine issues of material fact concerning these requirements.

### 1. The Alleged Contract Is Not Invalid on Account of Impossibility

Although Tarrant contends that the performance referred to in the October 3 e-mail is impossible and thus demonstrative of the contract's fabrication, possibility of performance is not essential to the formation of a contract. Notwithstanding that impossibility may "give rise to nonenforcement of the resulting agreement ... the mere fact that the parties have contracted to do an impossible thing will not necessarily prevent enforcement by way of remedy. Thus, the resulting obligation is properly defined as a contract." *Williston on Contracts* § 3:2. While Tarrant's contention, if true, may create a presumption that the alleged contract indeed does not exist, the existence of a contract is a factual determination. *See Dickson v. Mitchell*, 87 A.D.2d 697, 448 N.Y.S.2d 861, 863 (3d Dep't 1982).

▮ Bazak provides sufficient evidence for a fact-finder to conclude that the alleged agreement underlying the October 3 e-mail is possible. Specifically, Bazak points to the circumstances of Tarrant's sale to David's Place to demonstrate the constant fluctuation of precise quantities at issue in any particular re-sale contract and thus of the irrelevance of "impossibility" at any one point in the relationship. (Feldman Aff. ¶¶ 18, 25, 32; Jacobi Aff. ¶¶ 15–19.) This is sufficient to demonstrate a genuine issue of material fact concerning the issue of trade usage, and therefore, of impossibility.

### 2. A Jury Could Find the Existence of Mutual Assent

▮ Even while asserting a contract under UCC Section 2–201(2), parties must still demonstrate the element of mutual assent. *Mast Industries*, 538 N.Y.S.2d ·503, 535 N.E.2d at 635. Mutual assent is a question of fact to be found by the jury. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 145 (2d Cir.2001). To determine the presence of mutual assent, or a "meeting of the minds," the court must look for a " 'manifestation or expression of assent ... by word, act, or conduct which evinces the intention of the parties to contract.' " *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir.2004) (quoting 22 N.Y. Jur.2d *Contracts* § 29). The totality of parties' acts, phrases and expressions must be considered, along with "the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Lumhoo v. Home Depot USA, Inc.*, 229 F.Supp.2d 121, 161 (E.D.N.Y. 2002) (citing *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 393 N.Y.S.2d 350, 361 N.E.2d 999 (1977)); *see also Williston on Contracts* § 3:5.

▮ Construing evidence in the light most favorable to the non-moving party, Bazak's actions demonstrate sufficient objective assent for a reasonable jury to find intent to form a contract. Specifically, the "confirmatory" e-mail sent on October 3 creates a genuine issue of material fact as

to Bazak's intent to be bound by explicitly confirming an alleged oral agreement arrived at previously by the parties.

 While there are potential discrepancies between the October 3 e-mail and other documentation allegedly pertaining to the same sale, these are not necessarily fatal to Bazak's claim of assent. In *Mast Industries*, the New York Court of Appeals explained that not all parts of the proffered document must make sense in order for a non-moving party to survive summary judgment. *See* 538 N.Y.S.2d 503, 535 N.E.2d at 638 (denying defendant's motion for summary judgment, holding that the small print at the bottom of the forms stating that they are "[o]nly an offer and not a contract unless accepted in writing by the seller" did not disqualify the documents as confirmatory writings of the alleged oral agreement, since it was obvious from their face that the printed words were entirely irrelevant to the parties' dealings). Generally speaking, if intent to be bound is otherwise demonstrated by the parties, the court should enforce the agreement if at all possible. *See id.; see also American Plastic Equip., Inc. v. CBS, Inc.*, 886 F.2d 521 (2d Cir.1989) (denying motion for summary judgment, holding that the fact that one party never supplied the other with a definitive list of goods that were included in the contract term "Schedule A" was not conclusive evidence that the parties did not know which goods were the subject of the agreement, and determining that a reasonable jury could find the existence of a contract despite the absence of a document listing the goods).[6] Under this standard, the October 3 e-mail provides sufficient evidence to demonstrate a genuine issue of material fact as to whether the parties mutually assented to a contractual agreement.

Most importantly, under the UCC, terms set forth in the confirmatory writing may be "explained or supplemented ... by course of dealing or usage of trade or by course of performance." N.Y. U.C.C. Law § 2–202.[7] Usage of trade is relevant not only to the interpretation of express contract terms, but may also itself constitute contract terms. *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 102 (2d Cir.2002) (citing James J. White & Robert S. Summers, *Uniform Commercial Code* § 3–3 (2d ed.1980)). Thus, standard industry custom and practice is relevant when interpreting contracts under the UCC.

The court finds that Bazak has presented adequate evidence to demonstrate a genuine issue of fact concerning trade usage that, if found by a jury, could demonstrate the company's intent to be bound. In particular, Bazak disputes that the apparent inconsistency between the parties' understandings of the quantity of goods available for purchase or the "impossibility" of the alleged sale demonstrates a lack of mutual assent. Instead, Bazak argues that daily changes in the availability of goods for sale require transactions in the closeout re-sale textile industry to fluctuate constantly. (Feldman Aff. ¶¶ 18, 25, 32; Jacobi Aff. ¶¶ 15–19.) As a result, it is common practice within the trade to quote a quantity, fully conscious that at the point of performance, the exact quantity may be different. Having put forth evidence to this effect, Bazak has demonstrated a gen-

---

6. The court in *American Plastic* was interpreting the New Jersey UCC statute, which is identical to New York's provisions.

7. The phrase is further defined as "any practice or method of dealing having such regu-

larity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." N.Y. U.C.C. Law § 1–205.

uine issue as to the material fact of mutual assent.

Bazak has also presented adequate evidence to create an issue of fact concerning Tarrant's manifested and expressed assent to the alleged agreement. Although Tarrant argues that its constant refusal of Bazak's requests for purchase orders, as well as its failure to perform the in-house procedures required for the re-sale transaction, demonstrate it had not yet assented, Bazak provides sufficient contradictory evidence to raise a question of fact. In particular, Bazak contends that the GMAC e-mail forwarded to it by Tarrant, along with the remark made to Bazak's officer by Tarrant's agent, Guez, demonstrate sufficient assent. (Pl. Mem. at 8, 19, 20, 25; Def. Reply at 2; Affidavit of Ron Yeffet, dated February 23, 2005 ("Yeffet Aff."), ¶ 7.) Bazak also disputes Tarrant's assertion that the issuance of purchase orders prior to the formation of an oral agreement or creation of a "confirmatory writing" is standard re-sale industry practice. (Feldman Aff. ¶ 24; Jacobi Aff. ¶ 18.) In addition, Bazak contends it had been told by Buchan that pro-forma invoices were "forthcoming." (Feldman Aff. ¶ 29.) Together, construing these facts in favor of Bazak, there is adequate evidence to demonstrate a genuine issue of material fact. This precludes the Court from granting summary judgment.

C. *EXHIBIT 3 SATISFIES THE THRESHOLD REQUIREMENTS OF RELEVANCE AND AUTHENTICITY TO SURVIVE SUMMARY JUDGMENT*

Tarrant contends that the Exhibit 3 letter offered by Bazak as a "writing in confirmation" of an earlier agreement is inauthentic and therefore inadmissible. However, Exhibit 3 survives the threshold determination of authenticity as a matter

of law. *See United States v. Ruggiero,* 928 F.2d 1289, 1303 (2d Cir.1991). Consequently, the ultimate resolution of its admissibility is a question to be determined by the fact-finder. *See United States v. Tocco,* 135 F.3d 116, 129 (2d Cir.1998).

■■■■ The principles governing admissibility of evidence apply equally on a motion for summary judgment as in a trial. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997). In both, proper admission requires a determination on relevance and authenticity. Fed.R.Evid. 901 advisory committee's note. Relevance is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Exhibit 3 passes this threshold determination. If admitted, Exhibit 3 would increase the probability that a jury could find that a contract existed between Tarrant and Bazak.

■■■■ Exhibit 3 likewise overcomes the Court's threshold determination of authenticity as a matter of law. Federal Rule of Evidence 901(a) states: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a).

■■■■ This threshold determination is relatively low, as evidence is admissible as authentic "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Ruggiero,* 928 F.2d at 1303. "'[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication,

and hence for admissibility, is one of reasonable likelihood.' " *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999) (quoting *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir.1994)).

Once the court determines that the proponent of the evidence meets the threshold, the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder. *See Raskin*, 125 F.3d at 66. Bazak has offered adequate proof of Exhibit 3's authenticity for a reasonable jury to find in its favor. Both Feldman and his employee Luis Gonzales ("Gonzales") attest that the letter was handwritten by Feldman, and subsequently typed on the computer and sent to Tarrant by Gonzales. (Affidavit of Robert Gonzales, dated February 25, 2005 ("Gonzales Aff."), ¶¶ 2–5; Feldman Aff. ¶¶ 26–28.)[8] Whether the alleged facts are credible in light of Tarrant's evidence to the contrary is a question for the jury and inappropriate to determine on summary judgment. *See Raskin*, 125 F.3d at 66.

## IV. *CONCLUSION*

For the reasons set forth above, Tarrant has failed to demonstrate the absence of genuine issues of material fact necessary to prevail on a motion for summary judgment. The October 3 e-mail is a legally cognizable "confirmatory writing" under the UCC "merchant's exception." The remaining Section 2–201(2) elements of receipt and objection are questions of fact as to which Bazak has put forth sufficient evidence for the fact-finder to conclude in its favor. In addition, Bazak has provided adequate proof of mutual assent for a reasonable jury to find its existence. Finally, Bazak's submission of Exhibit 3 is supported by enough evidence of its relevance and authenticity to be sent to the jury for final determination. Therefore, Tarrant's motion for summary judgment is denied.

## V. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant, Tarrant Apparel Group, for summary judgment on the breach of contract claim is DENIED; and it is hereby further

**ORDERED** that the parties appear at a conference on July 29, 2005 at 1:30 p.m. to discuss remaining pretrial proceedings.

**SO ORDERED.**

---

8. While not dispositive on the issue of Exhibit 3's authenticity, the Court notes that the affidavit of Robert Gezelter ("Gezelter") submitted by Bazak is inadmissible to support Exhibit 3's authenticity. (*See* Affidavit of Robert Gezelter, dated February 24, 2005 ("Gezelter Aff.").) Bazak has submitted no claim that Gezelter be considered an expert witness, nor has it fulfilled any of the procedures necessary to expert discovery. *See* Fed.R.Civ.P. 26. As a result, the Court determines the admissibility of Gezelter's affidavit under Federal Rule of Evidence 701. Federal Rule of Evidence 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. Gezelter's affidavit fails these criteria. It provides no "firsthand knowledge or observation" of Bazak's computer as required by Rule 701(a). Fed. R.Evid. 701 advisory committee's note; (Gezelter Aff. ¶¶ 9–10.)

The affidavit also directly contravenes the restriction of 701(c), since it pertains exclusively to specialized and technological knowledge of computers. Fed.R.Evid. 701 advisory committee's note; (Gezelter Aff. ¶¶ 1, 15–19, 20–21.)